**SIBLEY MEMORIAL HOSPITAL,**
Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,**

and

Ann Garrett, Intervenor.

No. 97–AA–263.

District of Columbia Court of Appeals.

Argued March 20, 1998.

Decided May 7, 1998.

David B. Stratton, with whom D. Stephenson Schwinn, Washington, DC, was on the brief, for petitioner.

Martin B. White, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Lutz Alexander Prager, Assistant Corporation Counsel, were on the brief, for respondent.

Michael V. Kowalski, Washington, DC, for intervenor.

Before FARRELL and REID, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

Sibley Memorial Hospital (Petitioner) petitions this court for review of the decision of the Director of the Department of Employment Services (DOES), upholding a Compensation Order a DOES Hearing Examiner entered that Petitioner pay to Ms. Ann Garrett (Claimant) "the medical expenses associated with Dr. Azer and Dr. Goald." The Hearing Examiner found that "Claimant did not engage in an unauthorized change of physicians, and that the third surgical procedure [which Drs. Goald and Azer had performed] was reasonable and necessary." [1] Upon this record, we are constrained to remand the case to DOES for further proceedings.

It is undisputed that Claimant was an employee of Petitioner and sustained in July

---

1. The Hearing Examiner closed the record of the proceedings on September 25, 1992. We note that Dr. Azer had performed a fourth surgical procedure, a coccygectomy, in April 1992, although neither the Hearing Examiner nor the Director referred to this procedure. Nevertheless, the Compensation Order declared that petitioner pay to claimant "*the* medical expenses associated with Dr. Azer and Dr. Goald." (Emphasis added.)

1986, an injury to her back arising out of and in the course of her employment. The Hearing Examiner found in the Compensation Order:

> [C]laimant, who then weighed approximately 98 pounds, was assisting a 200 pound falling patient back into her chair.... [She] felt "something pop" in her back followed by low back pain and discomfort.

The record reflects that between the date of her injury and April 1992, Claimant was examined by eleven different physicians and underwent four surgical procedures, all in connection with the injury she had sustained as a consequence of lifting a patient while employed by Petitioner.[2]

Petitioner, at the hearing before the Hearing Examiner, contended that Claimant's final two surgeries, performed by Drs. Goald and Azer, were not necessary, relying on (1) the testimony of two experts who had examined Claimant prior to the November 1991, surgery; (2) the opinion of Dr. Sloan who had been Claimant's treating physician from the time of her initial injury in 1986 until February of 1991; and (3) the opinion of Medical Claims Review Service ("MCRS"), from whom Petitioner had requested a utilization review report pursuant to D.C.Code § 36–307(b)(6)(B) (1997 Repl.).[3] Petitioner also argued that Claimant engaged in an unauthorized change of physicians when she obtained treatment from Drs. Goald and Azer rather than from her treating physician, Dr. Sloan.

At the request of Drs. Goald and Azer, MCRS reconsidered its initial conclusion that the disputed surgeries were unnecessary and filed a supplemental report on October 1, 1992.[4] MCRS did not change its conclusion that the surgeries were unnecessary, but did provide some additional explanation of its position. However, the Hearing Examiner refused to reopen the record in order to add the supplemental utilization review report, although she did not issue the Compensation Order until November 28, 1994.

Petitioner appealed to the Director, who rendered her decision in January 1997. The Director did not address the issue whether the surgery was necessary, but rather considered only the issue whether Claimant's change of physicians was authorized under the Act. The Director, relying on *Medical Assocs. of Capitol Hill v. District of Columbia Dep't of Employment Servs.*, 565 A.2d 86 (D.C.1989), affirmed the Hearing Examiner.

■ Petitioner first contends that the Hearing Examiner erred by refusing to consider the supplemental utilization review report. We note that the Corporation Counsel of the District of Columbia, representing Respondent DOES, concedes that this omission was an error on the part of the agency that requires a remand. [Brief at 7, n. 5.] We further note that the supplemental utilization review report explained why the Review Service did not consider neurodiagnostic tests such as the EMG and NCV studies dispositive in reaching its conclusion that the surgery was unnecessary. This explanation is significant to the disposition of this case because the Hearing Examiner had based her rejection of MCRS's conclusion in part on the fact that "there was no evidence that [MCRS] reviewed the EMG and nerve conduction study results...." [Comp. Order.] Consequently, we cannot say upon the record before us that the Hearing Examiner would have reached the same conclusion had it considered the supplemental utilization review

---

2. The physicians were Drs. Sadlack, Sloan, Wiesal, Gordon, Tozzi, Wright, Cooney, Carron, Kratz, Goald, and Azer. The surgeries performed were a partial left hemilaminectomy, a left laminectomy, a diskectomy and spinal fusion, and a coccygectomy.

3. "When it appears that the necessity, character, or sufficiency of medical care or service to an employee is improper or that medical care or service scheduled to be furnished must be clarified, the Mayor, employee, or employer may initiate review by a utilization review organization or individual." D.C.Code § 36–307(b)(6)(B).

4. D.C.Code § 36–307(b)(6)(C) provides that, "[i]f the medical care provider disagrees with the opinion of the utilization review organization or individual, the medical care provider shall have the right to request reconsideration of the opinion by the utilization review organization or individual 60 calendar days from receipt of the utilization review report."

report.[5] Accordingly, we must remand the case in order that the agency has a full and complete record upon which to make its determination. *See Bennett v. District of Columbia Dep't of Employment Servs.*, 629 A.2d 28, 31 (D.C.1993).

The record reflects that in rendering her determination, the Hearing Examiner not only refused to consider the supplemental utilization review report but also failed to explain clearly why the utilization review report rendered pursuant to the applicable statute was not decisive in making her determination. MCRS in its report thoroughly reviewed Claimant's six-year medical history. It focused on the inconsistent clinical findings of six different doctors who had examined Claimant in the ten months prior to her third surgery and on the results of the neurodiagnostic tests performed most recently before such surgery. The MCRS report then concluded that the submitted records in its opinion did not support the necessity or timeliness of the third surgical procedure. Even after it had reconsidered its decision at the request of Drs. Goald and Azer, MCRS concluded that the surgery was unnecessary. The Compensation Order, entered two years after the record was closed, does not address the dispute presented by the reports of MCRS and the differing opinions of the various experts deposed for and testifying at the hearing with a clear explanation of the conclusion reached. In sum, the Hearing Examiner's findings of fact do not support the conclusion reached in the Compensation Order.[6]

■ On remand, DOES must address expressly the differing expert opinions and explain clearly which experts it credits and why

it credits them, as well as why the conclusion presented in the MCRS report is without merit. We understand the intent that the District of Columbia Council had in enacting D.C.Code § 36–307(b)(6), as explained by the Committee Report, was to contain medical costs without diminishing the quality of health care. Hence, a utilization review report presented to DOES that concludes the surgery performed was unreasonable requires DOES to address specifically this report and articulate reasons why this report is being rejected.

Petitioner also contends that DOES erred in concluding that Claimant did not engage in an unauthorized change of physicians. In accordance with the statute, "[t]he employee shall have the right to choose an attending physician to provide medical care under this chapter." D.C.Code § 36–307(b)(3). Once an employee has selected a treating physician, however, such employee must obtain permission from either the insurer or the Office of Workers' Compensation before switching to another physician. 7 DCMR §§ 212.12, –13 (1994). DOES has apparently interpreted this requirement to permit referrals from an employee's treating physician to another physician for purposes of evaluation, and this court has affirmed that interpretation. *See Medical Associates, supra.*

Here, the record reflects a different issue than that posed in *Medical Associates*. The Claimant had been referred to the physician who performed one of her disputed surgeries, Dr. Goald, by Dr. Kratz, to whom in turn she had been referred by her treating physician, Dr. Sloan. Dr. Goald then referred Claimant to the other physician who performed disputed surgery, Dr. Azer, without

---

5. Indeed, the examiner refused to consider the supplemental utilization review report for no other stated reason than that "there was no material change in the additional opinions [*i.e.*, those stated in the supplemental report] from the opinion in the report admitted at the hearing." But the fact that MCRS, on reconsideration, adhered to its original opinion that the surgery was unnecessary is scarcely reason, by itself, to refuse to consider the supplemental report.

6. For example, in the Findings, the only test results discussed by the Hearing Examiner "revealed no evidence of spinal instability." Without further explanation, other than that she "re-

. lied upon the medical reports of Drs. Goald and Azer," the Hearing Examiner concluded that the surgical procedure of November 21, 1991, which included a spinal fusion performed by Dr. Azer, was reasonable and necessary. Thus, the Hearing Examiner concluded that a surgery (spinal fusion) was reasonable and necessary when the only findings made regarding the condition that would necessitate such surgery (spinal instability) were that such instability did not exist. Also, the Hearing Examiner discusses none of the medical reports of Drs. Goald and Azer upon which she purportedly relied.

obtaining an approval on the record from Dr. Sloan or Dr. Kratz. The Hearing Examiner concluded, and the Director affirmed, that all physicians along a chain of referral that commenced with the treating physician were authorized under the statute to perform their services.

■ Ordinarily, this court must accord deference to an agency's reasonable interpretation of the statute that it administers. *See Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988). This deference is only warranted, however, when the record provides some evidence that the Director considered the language, structure, or purpose of the statute when selecting an interpretation. *See Mushroom Transp. v. District of Columbia Dep't of Employment Servs.*, 698 A.2d 430, 432–33 . (D.C.1997). There is nothing in the record to show that the Director considered any of these factors in concluding in this case that Claimant did not engage in an unauthorized change of physicians. Rather, the Director relied solely upon *Medical Associates* without explaining how that decision was dispositive of the particular facts in this case. We note that in *Medical Associates* this court specifically distinguished its facts from the facts in the instant case. *See id.*, 565 A.2d at 88 ("[T]his case does not involve ... an initial referral by a Panel member followed by a succession of referrals, which could raise the same quality and cost concerns that the Panel system is designed to avoid.").

In addition, *Medical Associates* was decided prior to the 1991 amendment to the Workers' Compensation Act, in which the Panel system was abolished.[7] Thus, a Panel system was in place in *Medical Associates* to insure some sort of control over a series of referrals to different doctors, and the single referral to a non-Panel physician in that case was by a Panel physician who never lost contact with the patient. The instant case is quite different: a chain of referrals involving several different physicians. We note that Claimant's treating physician recommended

against the surgery in dispute. We deem the Director's conclusion upon the record as an expansion of the agency's previous interpretation of the statute rather than as a mere application of it. This court must have some explanation before reviewing the reasonableness of this expanded interpretation of how such interpretation is supported by the language, structure, or purpose of the amended statute.

We note that petitioners did not argue, and we do not suggest, that the statute must be read narrowly to permit employees to change physicians only with specific permission from the insurer, employer, or agency. This court has recognized the tension faced by DOES between "the right of employees to safe and adequate medical treatment of work-related injuries [and] the right of employers to protection against unreasonable or improper claims," *Ceco Steel, Inc. v. District of Columbia Dept. of Employment Servs.*, 566 A.2d 1062, 1064 (D.C.1989) (citations omitted). We therefore have upheld reasonable interpretations of the statute by DOES that, in recognition of these competing considerations and the realities of modern medicine, permit employees to see more than one physician without specific permission from the insurer, employer, or agency. *See id.; Medical Associates, supra.* We cannot determine whether an interpretation by the Director is reasonable, however, when the only explanation for that interpretation is a citation to a case that, as explained *supra*, specifically stated that the holding did not apply to facts such as these.

Therefore, on remand, the agency should revisit this issue, considering how the purposes of the Act might be thwarted or furthered through permitting an employee to change physicians through a chain of referrals rather than through written authorization as required by 7 DCMR § 212.12. In addition, the agency should not only consider the distinctions between this case and *Medical Associates* and how this might affect the

---

7. The Panel system was abolished at the same time the procedure for obtaining utilization review reports was created. Under the Panel system, the Mayor had a list of physicians, or "panel," from which employees could select a treating

physician. Under the current system, the employee may choose any licensed doctor, dentist, or chiropractor as her treating physician. D.C.Code §§ 36–307(b)(3), –301(17A).

determination of whether Claimant's change of physicians was authorized, but also consider the repeal of the Panel system and how such repeal might affect the reasonableness of the agency's past interpretation of the statute that was reflected in *Medical Associates.*

In sum, the tasks for DOES upon the remand of this case are:

(1) To reopen the record and receive the supplemental utilization review report; and,

(2) To consider carefully such report, within the context of all the other evidence, and explain why the conclusion of the supplemental utilization review report is not dispositive and must be rejected; and,

(3) To reexamine the sequence and reasons for the examinations and evaluation of the Claimant by the different physicians in this case and set forth its reasoning and conclusion why this particular series of events does not constitute an unauthorized change of physicians within the meaning of the applicable statute.[8]

*Remanded.*

---

**8.** Judicial review of an agency's decision requires that "(1) the decision ... state findings of fact on each material, contested factual issue; (2) those findings ... be based on substantial evidence; and (3) the conclusions of law ... follow rationally from the findings." *Colton v. District of Columbia Dep't of Employment Servs.,* 484 A.2d 550, 552 (D.C.1984) (quoting *Perkins v. District of Columbia Dep't of Employment Servs.,* 482 A.2d 401, 402 (D.C.1984)).