The WASHINGTON HOSPITAL
CENTER, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

**Roberta West, Intervenor.**

No. 00–AA–1078.

District of Columbia Court of Appeals.

Argued Oct. 31, 2001.
Decided Jan. 24, 2002.

**1262** 

William P. Dale, Bowie, MD, for petitioner.

Richard W. Galiher, Jr., Rockville, MD, for intervenor.

Before STEADMAN, SCHWELB and WASHINGTON, Associate Judges.

STEADMAN, Associate Judge.

Under the present version of the District of Columbia Workers Compensation Act (DCWCA), D.C.Code § 32–1507(b)(3) (2001), an injured employee has an essentially unfettered right to choose an initial attending physician to provide medical care for the injury. Once chosen, however, that physician may not be changed by the employee without authorization from either the insurer or the Office of Workers Compensation (Office), a component of the Department of Employment Services (DOES). In the case before us, the injured employee received medical treatment from ten different doctors, all of whose fees and expenses the employer was ordered by the Director to pay. At issue are both the criteria to be used in determining who is a chosen "attending physician" and the extent to which that physician without further authorization may make "referrals" or the like to other medical care providers, who may in turn make further referrals. Because we are unable from the record before us to determine the precise present position of the agency on these issues and the legal reasoning with respect thereto, we are constrained to remand the case for further proceedings.

## I.

Roberta West (Claimant) sustained a back injury when she slipped on a paper towel while working as a labor and delivery nurse at Washington Hospital Center (WHC) on January 16, 1995. Since the date of her work-related injury Claimant has been examined by at least ten different doctors in connection with this injury. The details with respect thereto are intricate and somewhat imprecise, but may for present purposes be summarized as follows. For a period after her injury, Claimant was treated by Dr. Gordon and other orthopaedic physicians in his office. Then, with permission from her employer, Claimant went to see Dr. Batipps, a neurologist, who in turn referred her to Dr. Cooney, a neurosurgeon. Since Claimant did not wish to undergo surgery, she obtained permission from her employer to see Dr. Norris, a pain management specialist, in order to participate in a four-week rehabilitation program at the National Rehabilitation Hospital (NRH). Apparently, the doctor-patient relationship between Dr. Norris and Claimant subsequently deteriorated. Without a referral from Dr. Norris and without permission from her employer, Claimant returned, either directly or through Dr. Cooney, back to Dr. Batipps. Dr. Batipps in turn referred her to several other doctors, for both physical and psychological medical care, including Dr. McLaren, an anesthesiologist, Dr. Rhoades, also an anesthesiologist, Dr. Harmon, a psychiatrist, Dr. Anderson, a specialist in physical therapy, and (although not indisputably) Dr. Igna-

cio, a pain management specialist. Dr. McLaren in turn referred her to Dr. Briley, a psychologist.

WHC, a self-insurer under the DCWCA, refused to pay for any of Claimant's medical expenses incurred after she left the NRH. At the hearing before the hearing examiner, WHC contended that Dr. Norris was Claimant's authorized attending physician and that all medical care obtained after Claimant's discharge by Dr. Norris from the rehabilitation program at NRH "is not its responsibility, in that it is the result of unauthorized changes in physicians."[1] Claimant, on the other hand, argued that Dr. Batipps was in fact her attending physician and that Petitioner was responsible for the expenses of all medical treatment following her release from NRH since they were the result of referrals from Dr. Batipps. The hearing examiner determined, and the Director affirmed, that Dr. Batipps was the "attending physician" and that no express approval was required for the five post-NRH referrals made by him or any onward referral made by Dr. McLaren. WHC challenges these rulings both on the facts and on the law.

## II.

As amended in 1991, the DCWCA provides that "[t]he employee shall have the right to choose an attending physician to provide medical care under this chapter." D.C.Code § 32–1507(b)(3) (2001).[2] However, broadly speaking, the DCWCA further provides that "[t]he Mayor shall supervise the medical care rendered to injured employees, shall require periodic reports as to the medical care being rendered to injured employees, shall have the authority to determine the necessity, character, and sufficiency of any medical aid furnished or to be furnished, and may order a change of physician or hospital when in his judgment such change is necessary or desirable." D.C.Code § 32–1507(b)(4). Implementing regulations provide that once an attending physician (or other medical care provider) has been selected to provide treatment under the DCWCA, "an injured employee shall not change to another medical care provider or hospital without authorization of the insurer or the Office." 7 DCMR § 212.12 (1994). "If the employee is not satisfied with medical care, a request for change may be made to the Office. The Office may order a change where it is found to be in the best interest of the employee." *Id.* at § 212.13. This framework appears to attempt a balance, within the overarching authority of the agency, between ensuring reasonable employee choice and right to effective medical treatment against the employer's right to protection against medical shopping and excessive costs.[3]

**1.** WHC also argued unsuccessfully that, in any event, Claimant's psychological and psychiatric treatments were not its responsibility because "the psychological injury from which Claimant suffers is not causally related to the work injury." We do not address this issue, as its relevance may be affected by the proceedings on remand.

**2.** This subsection was previously codified as D.C.Code § 36–307(b)(3). Prior to 1991, the DCWCA provided for a panel system, whereby the employee was required to choose an attending physician from a panel of physicians appointed by the Mayor. *See Medical Associ-* *ates of Capitol Hill v. District of Columbia Dep't of Employment Servs.,* 565 A.2d 86, 87–88 (D.C.1989).

**3.** Speaking with respect to the former panel system, we noted: "The tension inherent in the resultant compromise arises from the need to provide employees with a meaningful opportunity to choose an attending physician and to protect employers from doctor-shopping by an employee seeking a favorable diagnosis." *Ceco Steel, Inc. v. District of Columbia Dep't of Employment Servs.,* 566 A.2d 1062, 1064 (D.C.1989).

Dr. Gordon was the physician who first treated Claimant after the injury. The problem arises in interpreting the rather ambiguous events in the subsequent treatment she received. WHC asserts that any permission given to see Dr. Batipps related at best only to a referral, not a change in attending physician, and that it gave authorization for a change in attending physician only with respect to Dr. Norris, who thereupon became Claimant's new attending physician. The hearing examiner did not closely analyze at length the specific circumstances surrounding the several actions of WHC, but instead appears to have concluded at bottom that Dr. Batipps was the attending physician because "as I view the evidence, Claimant's overall care has been managed by Dr. Batipps." Likewise, with respect to the series of post-NRH referrals, the hearing examiner seems to have basically concluded that since no evidence had been produced that the various treatments were unreasonable or unnecessary, they all were the employer's responsibility.

In its appeal to the Director, WHC renewed its arguments distinguishing between approved referrals and a change in the attending physician and challenging the system of unapproved referrals that took place in this case. The Director, however, with virtually no reference to the statutory and regulatory provisions, affirmed the hearing examiner's determination that Dr. Batipps was the attending physician. The Director further miscast WHC's position on the referrals as based on the argument that the post-NRH treatments were inappropriate and unnecessary rather than their asserted lack of authorization under the statutory scheme, and did not otherwise analyze the referral issue.

■ As we have stated on numerous occasions, this court will ordinarily defer to "an agency's reasonable interpretation of the statute that it administers." *Sibley*

*Memorial Hosp. v. District of Columbia Dep't of Employment Servs.*, 711 A.2d 105, 108 (D.C.1998) (citing *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988)). However, as we recently had occasion to reassert, to receive such deference, agency interpretations "'must reflect the careful legal and policy analysis required in making choices among several competing statutory interpretations, each of which has substantial support' and the record must provide evidence that the agency 'considered the language, structure, or purpose of the statute when selecting an interpretation.'" *Kirkpatrick v. District of Columbia Public Schools*, 786 A.2d 586, 594 (D.C.2001) (citations omitted); *see also Coumaris v. District of Columbia Alcoholic Beverage Control Bd.*, 660 A.2d 896, 899–900 (D.C.1995) ("It would be incongruous to accord substantial weight to an agency's interpretation of a statute where the record is barren of any indication that the agency gave any consideration at all to the statutory language or to the structure or purpose of the provisions which were ostensibly being construed.")

Several years ago, in *Sibley Memorial Hospital, supra,* we addressed a petition in a worker's compensation case in which the claimant had been treated by eleven different physicians and undergone four surgical procedures. Among the matters at issue was whether the employer was liable for medical expenses incurred by a series of successive referrals from the attending physician. The employer argued that these constituted unauthorized changes of physicians. The Director, relying on our opinion in *Medical Associates v. District of Columbia Dep't of Employment Servs.*, 565 A.2d 86 (D.C.1989), had ruled that all physicians along a chain of referral that commenced with the attending physician were authorized under the statute to perform their services. We noted, however, that the case differed from *Medical Asso-*

*ciates,* which involved only a direct referral from the attending physician and not successive referrals. Furthermore, we noted that even *Medical Associates* itself was decided under the old panel system and not under the new statutory scheme. Since the Director had engaged in no legal or policy analysis, we remanded the case to the agency to revisit as a whole the interrelations and distinctions between referrals and changes in attending physicians.[4] To the best of our knowledge, this re-examination is still in progress.

■ In any event, the Director's decision before us, gives no evidence of any present resolution of the broad issues that we understand were involved in the *Sibley* remand. We thus find ourselves in essentially the same position as we were in *Sibley,* including here the closely related issues of attending physician. We are unable to determine or assess the Director's current position as to the precise criteria that determines who is the attending physician, the procedures for authorizing changes, when such procedures must be resorted to, and when (what appears to be a common practice in modern medicine) referrals, consultations, and second opinions will be permitted under the DCWCA without seeking such authorization (including the issue of successive referrals). The whole area is one of obvious importance, calling for as clear-cut rules as possible. As in *Sibley,* on the record before us, we must remand the case to DOES for further appropriate proceedings.

*So ordered.*

---

4. We said: "Therefore, on remand, the agency should revisit this issue [of successive referrals], considering how the purposes of the Act might be thwarted or furthered through permitting an employee to change physicians through a chain of referrals rather than through written authorization, as required by 7 DCMR § 212.12. In addition, the agency should not only consider the distinctions between this case and *Medical Associates* and how this might affect the determination of whether Claimant's change of physicians was authorized, but also consider the repeal of the Panel system and how such repeal might affect the reasonableness of the agency's past interpretation of the statute that was reflected in *Medical Associates*." *Sibley, supra,* 711 A.2d at 108–09.