Gloria N. MITCHELL, Petitioner,

v.

D.C. DEPARTMENT OF EM-
PLOYMENT SERVICES,
et al., Respondents.

No. 11–AA–227.

District of Columbia Court of Appeals.

Argued March 27, 2012.

Decided June 22, 2012.*

Richard J. Link, for petitioner.

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of respondent's motion to publish.

Richard S. Love, Senior Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for respondents.

Before BLACKBURNE–RIGSBY and BECKWITH, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

Petitioner Gloria Mitchell, a special education teacher with the District of Columbia Public Schools (DCPS), appeals from a decision of the Compensation Review Board concluding that the District's Disability Compensation Program (DCP) was not required to compensate Ms. Mitchell for treatment for a work-related injury by a physician who is outside of the managed care organization that the District has designated to furnish health care services to its employees. The Board's decision reversed a determination by an administrative law judge (ALJ) from the Department of Employment Services ordering DCP to pay Ms. Mitchell's out-of-network medical bills. Finding the Board's decision to be reasonable and consistent with the relevant statutory language, we affirm.

## I. Background

Ms. Mitchell suffered the injury at issue in this case on April 9, 2008, after slipping on baby oil that a student had poured in a school hallway. She received immediate treatment from the school nurse, and after enduring pain throughout the night, sought additional treatment the next morning at a medical facility known as Patient First. A physician at Patient First referred Ms. Mitchell to Dr. Raymond D. Drapkin, an orthopedist who treated her from April 25, 2008, through the time of the hearing in this case before the Department of Employment Services Office of Hearings and Adjudication. Dr. Drapkin also referred Ms. Mitchell to a neurologist. Neither Dr. Drapkin nor the neurologist was a member of the District of Columbia's managed care organization known as OCCUNET. Under the care of these doctors, Ms. Mitchell began a course of treatment that included physical therapy, medication, and injections to treat the symptoms—including dizziness and persistent headaches—that she experienced as a result of her fall. At issue in this appeal is Ms. Mitchell's challenge to the decision to deny payment for her ongoing treatment with non-network doctors.

At an April 29, 2009, administrative hearing in this matter, Ms. Mitchell testified that she encountered some delays in filing her claim for compensation because the administrators at her school failed to immediately report the claim. The claim was eventually filed, however, and Ms. Mitchell received a letter from DCP dated June 5, 2008, informing her that her medical claim had been accepted. This letter was not offered into evidence, but the claims examiner testified that the standard claim acceptance letter informs employees that they are required to seek treatment from doctors within the OCCUNET program. By the time Ms. Mitchell's claim had been accepted in early June, she had seen Dr. Drapkin approximately three times, and DCP paid for these visits as part of her initial claim. After receiving written notice of the requirement to use OCCUNET providers, Ms. Mitchell continued treatment with three non-OCCUNET physicians—Dr. Drapkin; the neurologist; and an ear, nose, and throat specialist. With respect to Dr. Drapkin, in particular, Ms. Mitchell stated that she preferred to continue treatment with him "because of the consis-

tency in treatment that he gives and the good treatment that his staff provides."

Nicholas Cioffi, the claims examiner who took over Ms. Mitchell's case in July 2008, testified that he sent Ms. Mitchell two letters stating that she was receiving non-compensable treatment outside of the provider network, and attached to each a list of in-network physicians comparable to Dr. Drapkin from whom Ms. Mitchell could receive compensable treatment. Ms. Mitchell, who had seen Dr. Drapkin five times at that point and was seeing positive results, told Mr. Cioffi that she preferred to treat with Dr. Drapkin. The DCP nevertheless denied her request for compensation for her medical bills from non-OCCUNET doctors subsequent to the initial visits.

On June 8, 2009, the ALJ issued a compensation order finding DCPS to be responsible for payment of the out-of-network physicians to whom Ms. Mitchell had been referred and who had been treating her from the outset. DCPS appealed this decision to the Compensation Review Board, which reversed the ALJ's order directing payment to non-OCCUNET physicians on the grounds that the D.C. Government Comprehensive Merit Personnel Act, D.C.Code §§ 1–623.1–1–623.47, makes clear that medical care is to be provided by the managed care organization designated by DCP under the mayor's authority. Ms. Mitchell now appeals the Board's decision to this court.[1]

## II. Analysis

 Several well-established principles govern our review of an agency decision. In workers' compensation cases, we defer to the agency decision as long as "the decision flows rationally from facts supported by substantial evidence in the record," assuming that decision is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Marriott Int'l v. District of Columbia Dep't of Emp't Servs.*, 834 A.2d 882, 885 (D.C.2003). "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Children's Defense Fund v. District of Columbia Dep't of Emp't Servs.*, 726 A.2d 1242, 1247 (D.C.1999). Although we are vested with the final authority on matters of statutory construction, we must defer to an agency's interpretation of a statute it is charged with implementing so long as that interpretation is reasonable and consistent with the statutory language. *District of Columbia v. Davis*, 685 A.2d 389, 393 (D.C.1996). "The agency's interpretation, therefore, is controlling unless it is plainly erroneous or inconsistent with the statute." *Id.*

 D.C.'s disability compensation statute provides that when an employee is injured on the job, the District will furnish

> the services, appliances, and supplies prescribed or recommended by a qualified physician, who is approved by the Mayor or his or her designee pursuant to subsection (d) of this section, which the Mayor considers likely to cure, give relief, reduce the degree or period of disability, or aid in lessening the amount of the monthly compensation.

D.C.Code § 1–623.03(a) (2011). Such an employee "may initially select a physician to provide medical services, appliances, and supplies in accordance with such rules and regulations and instructions as the

---

1. This appeal actually stems from a subsequent order of the Board after the Board remanded to the ALJ for issuance of a compensation order denying Ms. Mitchell's claim for payment of her non-OCCUNET doctors' bills, the ALJ issued such an order, and the Board subsequently affirmed that order.

Mayor considers necessary. . . ." D.C.Code § 1–623.03(a)(3). The statute goes on to state that the employee shall be provided with such services and supplies "by a managed care organization or other health care provider designated by the Mayor or his or her designee, in accordance with such rules, regulations, and instructions as the Mayor considers appropriate." D.C.Code § 1–623.03(d)(1). The governing regulations reiterate that an injured employee may initially select a physician to provide medical services, 7 DCMR § 120.2, and further provide that "[o]nce a physician is selected to provide treatment under the Act, an injured employee shall not change to another physician or hospital without authorization of the Program." 7 DCMR § 120.4.

While Ms. Mitchell does not dispute that her physicians were not OCCUNET health care providers, she contends that the Board and this court should accord deference to the ALJ's findings that the out-of-network doctors who were treating her in the weeks following her workplace injury were the "treating physicians" whom the statute and regulations permitted her to select and whom her employer was not authorized to force her to change. This position is supported, in her view, by the unique facts of this case—namely, that the District failed to comply with the requirement that Ms. Mitchell's claim be processed within 30 days after filing, that despite the lack of response the claim was effectively deemed accepted after 30 days, that by the time a decision was reached on the claim she had been treated by non-OCCUNET physicians for approximately two months, that the employer paid for these visits, and that there was a dearth of evidence in the record indicating that Ms.

Mitchell had been afforded reasonable alternatives for treatment.[2] Ms. Mitchell characterizes the subsequent attempts to get her to change physicians as an unjustified modification of an accepted claim.

We cannot conclude that the Board's contrary interpretation of the statutory language, resulting in the rejection of Ms. Mitchell's request for compensation for these out-of-network providers, was unreasonable or arbitrary. At the outset, as a factual matter, it is undisputed that the physicians whose compensation is at issue in this appeal are not members of the managed care organization designated by the mayor. Ms. Mitchell's own testimony shows that by July of 2008, she knew she would have to obtain treatment from an OCCUNET physician if she wanted her employer to pay for that treatment. Separate and apart from the claims examiner's letter to her on this subject, this condition was also expressly stated in D.C.Code § 1–623.03. Indeed, in the view of the Board, "[n]othing could be clearer from the statutory provision than the requirement that medical services be provided by the managed care organization selected by the DCP," and "[a]ny right to make an initial selection must be read as being exercised within the parameters of the limits imposed by the statute."

With respect to Ms. Mitchell's contention that the DCP's agreement to pay her initial medical bills from non-OCCUNET physicians rendered those physicians her initially selected treating physicians who must be compensated under the statute, the Board, again, construed the governing law differently: "There is simply nothing in the statute or the regulations to support such a requirement." As the Board observed, a ruling that required the DCP to

---

**2.** She further asserts that her position is supported by case law addressing the private sector workers' compensation statute that permitted payment of non-approved physicians in some circumstances.

continue paying the bills of a non-participating physician once his initial bills were paid would deter the District's practice of paying for initial out-of-network health care services. In the Board's view, "it would likely redound to the detriment of injured workers, by making the DCP even more disinclined to pay for any non-affiliated medical services, even in emergency circumstances, lest they later be required to continue to pay the provider in the future." This conclusion is both reasonable and consistent with the statutory language, and we defer to it.

The decisions of this court upon which Ms. Mitchell relies—*Ceco Steel, Inc. v. District of Columbia Dep't of Emp't Servs.*, 566 A.2d 1062 (D.C.1989), and *Sibley Mem'l Hosp. v. District of Columbia Dep't of Emp't Servs.*, 711 A.2d 105 (D.C. 1998)—are not to the contrary. In *Ceco Steel*, we upheld as reasonable the Department of Employment Service's determination that accepting treatment as a result of emergency room care and reasonable follow-up care does not automatically constitute a selection of a physician under the Workers' Compensation Act. 566 A.2d at 1064. And in *Sibley Mem'l Hosp.*, we remanded to the Department of Employment Services to set forth its reasoning and conclusions as to why a chain of physician referrals did not constitute an unauthorized change of physicians under the Workers' Compensation Act. 711 A.2d at 108–09. Neither of these cases undermines the Board's conclusion in the present case that nothing about the circumstances surrounding Ms. Mitchell's treatment and claim—including DCP's payment for Ms. Mitchell's initial visits to non-OCCUNET physicians—obligated DCP under the statute and regulations to continue paying for her ongoing treatment by these physicians.

As Ms. Mitchell has failed to establish that the Board's decision was unreasonable or contrary to existing law, the order of the Compensation Review Board is

*affirmed.*