Fran M. HISLER, Petitioner,

v.

## DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent

and

PMA Insurance Group, et al., Intervenors.

No. 02–AA–670.

District of Columbia Court of Appeals.

Submitted Oct. 31, 2006.[1]

Decided June 19, 2008.

1. After the case was submitted, the court requested that respondent supplement the record with the entire administrative file. The supplemental record was received on August 10, 2007.

Fran M. Hisler, pro se.

Andres K. O'Connell for intervenors.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the statement was filed, and Todd S. Kim, Solicitor General, filed a statement in lieu of brief for respondent.

2. Unless otherwise noted, citations to the D.C.Code refer to the 1981 version, which

Before RUIZ and FISHER, Associate Judges, and SCHWELB, Senior Judge.

RUIZ, Associate Judge:

Petitioner, Fran M. Hisler, appeals the decision of the Director of the Department of Employment Services (DOES) affirming two Administrative Law Judge (ALJ) orders. The first order, issued by ALJ Fred D. Carney, granted petitioner's requests for reimbursement of certain medical expenses from intervenors, PMA Insurance Group and Gallaudet University ("Gallaudet" or "employer"), but denied reimbursement for others. The second order, issued by ALJ Amelia G. Govan, denied petitioner's request for reimbursement for vocational rehabilitation expenses. We affirm the Director's decision denying reimbursement of the medical expenses, but reverse the Director's decision denying reimbursement for vocational rehabilitation expenses, and remand the case for further proceedings.

**Factual Summary**

Petitioner was employed as a pediatric occupational therapist at Gallaudet in 1986 when she was diagnosed with chronic fatigue syndrome, a condition characterized by "a severe, incapacitating fatigue that isn't improved by bed rest and that may be exacerbated by physical or mental activity. It's an all-encompassing fatigue that results in a dramatic decline in both activity level and stamina." Department of Health and Human Services, Centers for Disease Control and Prevention, *Chronic Fatigue Syndrome*, http://www. cdc.gov/cfs/cfssymptomsHCP.htm. As a result of her injury, petitioner filed a claim for workers' compensation pursuant to D.C.Code §§ 36–301 *et seq.* (1981).[2] Employers con-

was in effect at the time of petitioner's injury.

cede that petitioner's chronic fatigue syndrome "arose out of, and during the course of, her employment [at Gallaudet]." In November of 1998, she and Gallaudet entered into a settlement agreement which, according to its terms, "represent[ed] the entire resolution of the cause of action arising under the DC Workers' Compensation claim." [3] Under the settlement agreement, Gallaudet agreed to pay petitioner a lump sump of $100,000 and $700 per month for her lifetime. In addition, the agreement states:

> The parties further agree that this settlement is being made *without any prejudice to the claimant's right to continue to receive* reimbursement from the insurance carrier [4] for Chronic Fatigue Syndrome *related medical treatment and services*[5] for a period of 5 years after the settlement is approved.

(Emphasis added)

After executing the settlement agreement, petitioner incurred expenses for a wide array of services she claimed were for treatment of her condition and for rehabilitation purposes. Gallaudet asserted that several of the expenses were not reasonably related to or necessary for treat-ing her condition and refused to reimburse her for some of the incurred costs.

Petitioner filed a claim for workers' compensation with DOES, and an evidentiary hearing was held before ALJ Carney on October 31, 2000. On March 23, 2001, ALJ Carney issued a compensation order concluding that most—but not all—of the expenses for which petitioner was seeking reimbursement were compensable under the D.C. Workers' Compensation Act. Specifically, ALJ Carney concluded that petitioner was entitled to reimbursement for pilates sessions, physical therapy, myofascial releases, nutritional counseling and supplies, food sensitivity screening, visual testing and treatment, an ergonomic chair, psychotherapy/biofeedback, functional cognitive rehabilitation, IV infusions (except for megavitamin infusions), lab work, temporomandibular joint care and chiropractic treatment. The ALJ concluded that petitioner was not entitled to reimbursement for certain other medical goods and services because there was no evidence that these expenses were incurred as a result of her chronic fatigue syndrome. Finally, ALJ Carney found that petitioner was not entitled to reimbursement for vocational rehabilitation, noting

3. The agreement was approved by DOES on December 28, 1998, pursuant to D.C.Code § 3-308(8), which provides:

 The Mayor may approve lump-sum settlements agreed to in writing by the interested parties, discharging the liability of the employer for compensation, notwithstanding §§ 36-316 and 36-317, in any case where the Mayor determines that it is in the best interest of an injured employee entitled to compensation or individuals entitled to benefits pursuant to § 36-309. The Mayor shall approve the settlement, where both parties are represented by legal counsel who are eligible to receive attorney fees pursuant to § 36-330. These settlements shall be the complete and final dispositions of a case and shall be a final binding compensation order.

4. At the time the contract was executed, the insurance company responsible for the payments was Liberty Mutual Insurance Company. The parties agree that petitioner's insurance benefits are now covered by Intervenor PMA Insurance Group.

5. The typed portion of the agreement does not include the term "and services," which was added by hand and initialed by the parties. There is no dispute that petitioner is entitled to "Chronic Fatigue Syndrome related medical treatment and services"; as discussed, *infra,* the only dispute is what is meant by the term "related medical treatment and services."

that "[t]here is no evidence to support a finding that [the vocational rehabilitation services] are related to claimant's chronic fatigue syndrome."

Petitioner filed a subsequent claim for reimbursement for vocational rehabilitation expenses she incurred beginning in August 1, 1999,[6] and a hearing was held before ALJ Govan on March 2, 2001. A compensation order issued on April 9, 2001, denied petitioner reimbursement for her vocational rehabilitation expenses on two separate grounds. ALJ Govan concluded that the settlement agreement was plain on its face, *i.e.*, only reasonably susceptible of one interpretation, that the term "medical treatment and services" did not include vocational rehabilitation. In the alternative, ALJ Govan concluded that petitioner was not entitled to reimbursement for her vocational rehabilitation expenses because according to a May 2000 Functional Capacity Evaluation, "no additional course work is required for claimant to return to work part time as an occupational therapist."

Petitioner appealed the decisions of both ALJs to the Director of DOES on April 18, 2001. As part of her appeal, on August 7, 2001, she filed a motion for sanctions in which she argued that the Director should impose sanctions "against employer and/or insurance carrier for failing to reimburse [her] in a timely way despite [ALJ Carney's] 3/23/01 order," that she was entitled to reimbursement of a number of her expenses. On September 7, 2001, Gallaudet filed a response to petitioner's application for review of the two ALJ decisions as well as a motion to strike and an opposition to her motion for sanctions. On December 10, 2001, petitioner filed a motion to strike Gallaudet's pleadings as untimely filed.

On May 17, 2002, the Director issued a written order denying petitioner's motion to strike the pleadings as well as her motion for sanctions. With respect to ALJ Carney's decision, the Director noted that ALJ Carney's finding that the "specified medical expenses ... were not causally related to [petitioner's] work injury ... [was] supported by substantial evidence, and ... in accordance with the law." The Director affirmed ALJ Govan's decision denying reimbursement for vocational rehabilitation expenses on the basis that "since vocational rehabilitation services was [sic] not specifically mentioned [in the settlement agreement] the Claimant was not entitled to such service." Petitioner seeks our review of the Director's order. In addition, petitioner raises a number of claims that were not presented to the agency. Specifically, she argues that (1) DOES lacked jurisdiction to hear and adjudicate her workers' compensation claims; (2) DOES erred in approving the settlement agreement; (3) DOES erred in failing to accommodate her disability during the administrative hearings; (4) DOES erred by failing to "promulgate new laws" for expedited insurance reimbursement; and (5) she was denied effective assistance of counsel.

### Analysis

■ Our standard of review in cases arising from the Director of DOES is limited. "The court defers to the determination of the director of DOES as long as the director's decision flows rationally from the facts, and those facts are supported by substantial evidence in the record." *Orius Telcoms., Inc. v. D.C. Dep't of Employment Servs.*, 857 A.2d 1061, 1065 (D.C. 2004). "Where there is substantial evi-

---

**6.** Specifically, she sought expenses for "vocational rehabilitation, retroactive to August 1, 1999, through the ending date of the Decem- ber 27, 1998 settlement agreement or until [she] finds suitable gainful employment."

dence to support the Director's findings ... then the mere existence of substantial evidence contrary to that finding does not allow this court to substitute its judgment for that of the Director." *McEvily v. D.C. Dep't of Employment Servs.*, 500 A.2d 1022, 1024 n. 3 (D.C.1985). With respect to issues of law, such as the interpretation of contracts, however, our review is *de novo. See Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C.2006).

Our cases make clear that only in exceptional circumstances will this court entertain claims not raised at the administrative level. *See Hill v. District of Columbia Dep't of Employment Servs.*, 717 A.2d 909, 912 (D.C.1998) ("[I]n the absence of exceptional circumstances, we will not entertain a claim that was not raised before the agency." (citation omitted)); *Hughes v. D.C. Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C.1985) ("Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review." (citations omitted)). Petitioner has not established—or even argued—that any such exceptional circumstances exist for her failure to raise any of these arguments.

■ "[T]he general rule is that even jurisdictional questions must be put to agencies before they are brought to the reviewing court." *D.C. Hous. Auth. v. D.C. Office of Human Rights*, 881 A.2d 600, 613 (D.C.2005) (citations omitted). A jurisdictional argument may be considered on appeal for the first time only where a petitioner claims that the agency "had no power to act at all." *Id.* (quoting *R.R. Yardmasters of Am. v. Harris*, 232 U.S.App. D.C. 171, 177, 721 F.2d 1332, 1338 (1983)). Even assuming petitioner now argues that DOES "had no power to act at all," this court may still decline to consider the argument "based on the cir-

cumstances and the requirements of justice." *R.R. Yardmasters of Am.*, 232 U.S.App. D.C. at 177, 721 F.2d at 1338 (quoting 4 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 26:7, at 444 (2d ed.1983); *see also D.C. Hous. Auth.*, 881 A.2d at 613 n. 16. In this case, the settlement agreement forming the basis of the disputes between the parties was approved by DOES nearly a decade ago. Moreover, petitioner sought to enforce her rights under the agreement and the D.C. Workers' Compensation Act by filing claims before DOES on several occasions. Accordingly, we conclude that the circumstances of this case do not warrant our consideration of petitioner's jurisdictional claim.

■ Moreover, her jurisdictional argument, to the extent we understand it, appears to have no merit. Appellant's argument is that a "rare [ ] historical document" establishes that Gallaudet employees are federal employees, such that they are not covered by the D.C. workers' compensation statute. In support of her position, petitioner has attached to her brief only an excerpt from a document (apparently from 1944) entitled "Memorandum on the Relation of the Columbia Institution for the Deaf to the Federal Government," without citation to a statutory provision, rule or official document that would support her claim that Gallaudet employees are covered under the federal act. To the contrary, she concedes there is no statutory support for the proposition that Gallaudet employees are federal employees for the purposes of workers' compensation. Moreover, as petitioner acknowledges, the Employees' Compensation Appeals Board of the United States Department of Labor has held that Gallaudet employees are not protected by the federal workers' act. *See In re Riggs*, 1998 ECAB LEXIS 1144, No. 97–1322 (Nov. 6, 1998) ("[B]ecause Gallaudet University is neither a part of any

branch of the United States Government nor wholly owned by it, appellant is not an 'employee' pursuant to the Act.").[7] Accordingly, we see no reason to conclude that DOES lacked jurisdiction to hear and decide the claims.[8]

### A. March 31, 2001 Compensation Order

■ Petitioner argues that ALJ Carney erred in denying reimbursement for "several causally related medical expenses." Her brief, however, refers to only one medical expense—megavitamin infusions—for which she was denied reimbursement and to which she argues she is entitled.

To the extent petitioner claims that the Director erred in affirming the ALJ's denial of other medical expenses, we consider the claims abandoned. *See* D.C.App. R. 28(a)(8)(A) (briefs must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the [petitioner] relies").

■ With respect to the megavitamin infusions, petitioner claims that the ALJ failed to give great weight to her physician's recommendation that she be treated with megavitamin infusions.[9] In this case, however, a utilization review performed by an independent expert, Dr. Joshua T. Yur-

---

7. Although not binding on the court, we note that the Settlement Agreement recites under "Findings of Fact":

2. At the time of [petitioner's] injury, the employer was covered under the Federal Government Employee's Compensation [A]ct. Subsequently, in 1996, the employer began coverage under the DC Worker's Compensation Act and coverage was provided by Liberty Mutual.

8. The remaining claims that she raises for the first time in this court can be rejected summarily. Petitioner argues that she was denied effective assistance of counsel before DOES and on appeal, but she cites no authority guaranteeing workers' compensation claimants effective representation. We know of none.

Petitioner's arguments that DOES erred in approving the settlement agreement and that DOES should "promulgate new regulations" are one and the same because they both rely on the same reasoning—that the current scheme is not adequate to address delays in insurance payments. Under D.C.Code § 3–308(8), *recodified as* D.C.Code § 32–1508(8) (2001), DOES has the power to approve settlement agreements and nothing in the provision limits that authority to cases where there is a guarantee of prompt reimbursement from an insurance carrier. Moreover, petitioner does not cite to any authority—and we are aware of none—that enables this court to order an agency to promulgate specific regulations without a statutory mandate requiring that it do so.

Finally, on the record before us, there is no merit to petitioner's claim that DOES failed to provide reasonable accommodation for her disability. She complains specifically of her need to take frequent breaks, "recline[ ] as needed," the availability of a real-time reporter, and the ability to tape-record the hearings. She makes references to "written requests for court accommodations" but provides us with no citations to the record or other evidence that these specific requests were made either to the agency or the court. Indeed, at least with respect to the real-time reporter, she concedes that DOES was never put on notice that she required one. In any event, even assuming DOES did not properly accommodate her at the hearing, petitioner's cause of action, as she recognizes in her brief, would be based on a violation of the Americans with Disabilities Act (ADA). The scope of our review under the DC APA, D.C.Code § 2–510, is limited to the decision of the Director of DOES under the Workers' Compensation Act, which does not include claims made under the ADA. Accordingly, her ADA-related claims are beyond the scope of our review in this case.

9. The "great weight" requirement is a recognition of this jurisdiction's long-standing preference for a treating physician's testimony over that of a medical expert retained solely for litigation purposes. *See Canlas v. D.C. Dep't of Employment Servs.*, 723 A.2d 1210, 1211–12 (D.C.1999).

fest, concluded that the megavitamin infusions were not necessary. His report noted that "use of megavitamins, folate and magnesium via IV administration has not been supported by the literature and has not been proven to be of value to the management of fibromyalgia."

Under the Workers' Compensation Act, "[w]hen it appears that the necessity, character, or sufficiency of medical care or service to an employee is improper or that medical care or service scheduled to be furnished must be clarified, the Mayor, employee, or employer may initiate review by a utilization review organization or individual." D.C.Code § 32–1507(b)(6)(B). Petitioner was entitled to submit any evidence to the utilization review team, but once the utilization review is completed, as the ALJ noted, "the report ... is decisive on the issue of reasonableness and necessity of medical services unless specific reasons are articulated why it should not be decisive." *See Sibley Mem'l Hosp. v. D.C. Dep't of Employment Servs.*, 711 A.2d 105, 107 (D.C.1998) (referring to purpose of statutory provision for utilization review as "contain[ment of] medical costs without diminishing the quality of health care. Hence, a utilization review report presented to DOES that concludes the [treatment] performed was unreasonable requires DOES to address specifically this report and articulate reasons why this report is being rejected." (citing D.C.Code § 32–1507(b)(6) (2001))). The ALJ properly relied on the conclusion of the utilization review, which was supported by employer's medical expert, despite the contrary opinions of petitioner's physicians, who recommended megavitamin infusions. Accordingly, we conclude that the Director's decision affirming the ALJ's denial of reimbursement for megavitamin infusions was according to law and supported by substantial evidence.

*B. April 9, 2001 Compensation Order*

Petitioner argues that she should have been reimbursed for her vocational rehabilitation expenses under the settlement agreement's provision entitling her to "Chronic Fatigue Syndrome related medical treatment and services." ALJ Govan disagreed and denied petitioner's request for reimbursement, stating:

The settlement agreement ... represents the entire resolution of this claim, and is not subject to expansion through the use of extrinsic evidence. No specific intention that employer provide vocational rehabilitation is set forth in the parties' agreement, and claimant's condition was, at the time the settlement was drafted, considered permanent. Finally, the agreement, on its face, refers to continued reimbursement for medical treatment and services, where no vocational rehabilitation had been implemented (or requested) prior to the settlement's effective date.

By excluding consideration of extrinsic evidence, we understand that the ALJ impliedly concluded that the contract was clear on its face in favor of employer's interpretation that vocational rehabilitation was not covered by the agreement.

 "In determining whether a contract is ambiguous, we examine the document on its face, giving the language used its plain meaning." *Tillery*, 912 A.2d at 1176 (citation omitted). "[A] contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Id.* (citations omitted).

"As has often been stated, the first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant." *Sagalyn v. Found. for Pres. of Historic Georgetown,* 691 A.2d 107, 111 (D.C.1997).

 We disagree with ALJ Govan that the agreement unambiguously excludes vocational rehabilitation from the term "Chronic Fatigue Syndrome related medical treatment and services." The employer's interpretation, that the term does not include vocational rehabilitation, is a reasonable construction of the contract; but so is petitioner's interpretation that it is included within its scope. Vocational rehabilitation is unquestionably a "service," and petitioner's need for vocational rehabilitation could certainly be "related"—as the contract requires—to her chronic fatigue syndrome. Even if we assume that vocational rehabilitation is not a *"medical* service"—itself an ambiguous proposition that might depend on the type of rehabilitation, as vocational rehabilitation could be an important component of petitioner's health and recovery—the term "medical" does not necessarily modify both "treatment" *and* "services." *See* 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 47:26 (7th ed. 2007) ("Where a sentence contains ... antecedents and several consequents they are to be read distributively. The words are to be applied to the subjects that seem most properly related by context and applicability .... (citing *Perkins v. D.C. Bd. of Zoning Adjustment,* 813 A.2d 206, 209 n. 5 (D.C.2002) ("The Rule of Last Antecedent states that '*ordinarily,* qualifying phrases are to be applied to the words or phrase immediately preceding them' ...." (emphasis added)))).

If the term "medical" modifies only "treatment," the settlement agreement would read "Chronic Fatigue Syndrome related ... services." Under such reading, petitioner's claim for reimbursement of costs she incurred for vocational rehabilitation would be covered so long as the vocational rehabilitation was "related" to petitioner's illness.

We also reject the ALJ's reasoning that since the agreement refers to petitioner's right to "continue to receive reimbursement," it unambiguously means that vocational rehabilitation is not included, because at the time the settlement agreement was signed, petitioner was not receiving vocational rehabilitation. A contract that was "without prejudice" to reimbursement for five additional years would not necessarily be read as limiting petitioner to the *precise* medical treatments and services she was receiving at the time of the settlement, rather than as setting a time limitation on the period during which she would be entitled to reimbursement.[10] Accordingly, we conclude that the ALJ erred in ruling that the contract was plain on its face and excluded vocational rehabilitation.

 Having determined that the agreement in this case is ambiguous, we remand to the Compensation Review Board—which has replaced the Director—and through it, to the ALJ, for an interpretation of the meaning of the agreement. Once a contract is deemed ambiguous, it is examined to determine "what a reasonable person in the position of the parties would have thought the words of a contract meant." *Sagalyn,* 691 A.2d at 112 n. 8. In doing so, the ALJ must "consider that the reasonable person is: (1) presumed to

---

**10.** A similar limitation proposed by employer, to expenses "contemplated by the parties at the time of the settlement agreement" was rejected by ALJ Carney "absent compelling authority and in light of the humanitarian purposes of the Act."

know the circumstances surrounding the making of the contract; and (2) bound by the usages of the term which either party knows or has reason to know and the course of conduct of the parties." *Id.*

The D.C. Workers' Compensation Act, which provides the legal basis for petitioner's claims as well as for their resolution by a settlement approved by DOES, see note 3, *supra,* was the backdrop against which the parties negotiated their agreement. The act provides that "the employer *shall* furnish . . . vocational rehabilitation." D.C.Code § 36–307(a) (emphasis added).[11] Moreover, the municipal regulations promulgated by DOES define "Medical Services and Supplies" as including "medical, surgical, vocational rehabilitation services."[12] 7 DCMR § 2099. After the parties signed the contract, it was submitted to DOES for approval. Given the statutory and regulatory context of this claim, the ALJ must consider whether a reasonable person in the position of these parties would have understood the term "related medical treatment and services" to include vocational rehabilitation, consistent with the usage of that term in the workers' compensation context. In attempting to make that determination, the ALJ should also consider that the term

"and services" was included in the agreement by hand notation—and whether it was intended to have a meaning separate and independent from "medical treatment."

▪ ALJ Govan relied on an alternative ground to deny the claim for vocational rehabilitation services based on her finding that

Claimant now demonstrates the ability to perform part-time work; she meets the physical requirements for Occupational Therapist (medical services) and Masseuse. Further occupational and physical treatment is not indicated; no additional course work is required for claimant to return to work part-time as an occupational therapist. . . .

Consequently, ALJ Govan concluded, "there is no merit to claimant's assertion that she needs a course of vocational rehabilitation to return to work." The Director did not rely upon this alternative ground, however, and we may not do so unless the result is "clearly ordained by law." *See Howard Univ. Hosp. v. D.C. Dep't of Employment Servs.,* 881 A.2d 567, 574 (D.C. 2005). We cannot say that high standard has been met on this record, so we remand on this issue as well.[13]

11. Medical services, supplies, and insurance:

(a) The employer shall furnish such medical, surgical, vocational rehabilitation services, including necessary travel expenses and other attendance or treatment, nurse and hospital service, medicine, crutches, false teeth or the repair thereof, eye glasses or the repair thereof, artificial or any prosthetic appliance for such period as the nature of the injury or the process of recovery may require. The employer shall furnish such additional payment as the Mayor may determine is necessary for the maintenance of an employee undergoing vocational rehabilitation, not to exceed $50 a week.
D.C.Code § 36–307(a).

12. 7 DCMR § 2099 states:

Medical Services and Supplies—a medical, surgical, vocational rehabilitation services (including necessary travel expenses and other attendance or treatment), nurse and hospital service, medicine, crutches, false teeth or the repair thereof, and any artificial or prosthetic appliance.

13. Based on a May, 2000 Functional Capacity Evaluation, ALJ Govan determined that "no *additional* course work is required for claimant to return to work part time as an occupational therapist." (Emphasis added). Before ALJ Govan, petitioner sought reimbursement for vocational rehabilitation expenses for several training seminars as a myofascial release therapist she attended some time before the Compensation Order in which the ALJ concluded that no "additional" vocational reha-

## C. *Motion for Sanctions*

 Petitioner argues that the DOES Director erred in denying her motion for sanctions, in which she claimed that the employer and insurance carrier improperly delayed reimbursing her for the expenses ALJ Carney ruled were compensable. The Director denied the motion for sanctions "after reviewing the arguments of the parties as set forth in their pleadings." On appeal, petitioner's brief provides no reason why, given our limited scope of review in agency matters, we should reverse the Director's decision denying her motion for sanctions. As it is petitioner's burden to establish error on review, and she has failed to do so, we decline to upset the Director's denial. *See* D.C.App. R. 28(a)(5).

*Affirmed in part, and reversed and remanded in part.*

bilitation was needed. The case is therefore remanded not only for a determination of whether the term "related medical treatment and services" includes vocational rehabilitation, but if so, also for a determination whether any such services were rendered before the effective date of the ALJ's determination that no additional vocational rehabilitation was needed. The ALJ should also determine whether the training as a myofascial release therapist would enable petitioner to work full-time or be more remunerative than part-time work as an occupational therapist. We note that although ALJ Govan's Compensation Order states that the lump sum and annuity payments in the settlement agreement were to compensate petitioner for "permanent total disability," the agreement itself recites that "[t]here is a dispute between the parties and a conflict in the evidence as to whether the claimant has sustained a permanent disability within the meaning of the D.C. Workers' Compensation Act." We therefore may not assume, as employer argues, that the settlement agreement did not contemplate that pe-

titioner might be able to return to work, and require vocational rehabilitation for that purpose.

We also decline to affirm the denial of reimbursement for vocational rehabilitation expenses for the reason stated in ALJ Carney's 2001 order, that there was no relationship between the vocational rehabilitation training and equipment from Maryland Department of Education, Division of Rehabilitation Services and petitioner's injury. Again, as this rationale was not relied on by the Director, we may affirm only if the decision was "clearly ordained by law." *Ngom v. D.C. Dep't of Employment Servs.*, 913 A.2d 1266, 1268 (D.C.2006). Petitioner's asserted need for vocational rehabilitation is her inability to perform as an occupational therapist after she contracted chronic fatigue syndrome. That causal link was essentially conceded by the employer's agreement to make disability payments during petitioner's life. Accordingly, ALJ Carney's reasoning is not "clearly ordained by law."