**POTOMAC ELECTRIC POWER COMPANY, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

and

**Michael A. Boone, Sr., Intervenor.**

No. 11–AA–1470.

District of Columbia Court of Appeals.

Argued Feb. 14, 2013.

Decided Oct. 3, 2013.

---

Shawn Nolen, with whom Kevin J. O'Connell, Washington, DC, was on the brief, for petitioner.

Irvin B. Nathan, Attorney General of the District of Attorney, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, filed a statement in lieu of a brief for respondent.

Michael J. Kitzman, Greenbelt, MD, for intervenor.

Before BECKWITH and McLEESE, Associate Judges, and RUIZ, Senior Judge.

BECKWITH, Associate Judge:

Potomac Electric Power Company (Pepco) petitions for review of a Compensation Review Board decision affirming a compensation order in favor of its employee, Michael A. Boone, Sr. The power company disputes that there was substantial evidence for the CRB to uphold an administrative law judge's conclusions (1) that Boone, who intervenes here, suffered from a lower back condition medically causally related to a workplace injury in May 1999 and (2) that surgery recommended by his doctor was reasonable and necessary to treat his condition. We disagree with Pepco and affirm.

## Background

Michael Boone, a heavy equipment operator for Pepco, testified at a hearing in front of the ALJ that he hurt his lower back at work in November 1998,[1] took a few months off, and then returned to work the following year. Then, on May 25, 1999, Mr. Boone was lifting a 30– to 40–pound chain sling so that he could attach it to the hook of a crane when, according to him, "I felt something in my back, and that was all she wrote." He said the May 1999

---

1. The November 1998 injury happened when Mr. Boone was driving "the front-end loader of another company." Mr. Boone evidently filed a separate workers' compensation claim after the incident, and that injury is not the basis of his claim here.

injury "aggravated" his injury from the year before, and after that he saw an orthopedic surgeon and a neurologist, was prescribed pain medication, was put in traction, and needed physical therapy for his lower back, including "dry needling" and transcutaneous electrical nerve stimulation (TENS) unit treatments. These treatments provided some relief but did not improve his condition, and the pain eventually spread to his left buttock. On cross-examination by Pepco's counsel, Mr. Boone acknowledged that he also later "aggravated" his back during lifting incidents in 2001 and 2008 that caused back spasms.[2] He agreed that the original November 1998 injury "initiated this whole thing."

After years of treatment by his family practitioner, Dr. Adolph Johnson, Mr. Boone was referred to a new neurosurgeon, Dr. Fraser Henderson, who in 2010 diagnosed him with degenerative disc disease within the lumbar spine and bilateral L–5 radiculopathy. Dr. Henderson recommended surgery to decompress the L–5 nerve. Dr. Henderson said he made his diagnosis and surgical recommendation after injecting a "nerve root block" at the L–5 level "[t]o determine whether indeed these nerves were the cause of the pain he is experiencing in his back and legs." The nerve block gave Mr. Boone "immediate relief though short lived," the doctor said, showing that surgery would help.

Although Dr. Henderson testified in a deposition that "the back injury [Mr. Boone] suffered in 1999 resulted in a condition that led to his … diagnosis and need for surgery," it became clear on cross-examination that the doctor actually was referring to Mr. Boone's first injury in 1998. In fact, Dr. Henderson said, he did not "have a record" of the May 1999 injury, was not familiar with it, and did not consider it in formulating his opinion. He further testified, again probably referring to the 1998 injury, that "I suppose you have to consider that if his back was badly injured in 1999 that any lifting he did after that would have resulted in spasms and more pain and whatnot. It all goes back to the original injury."

Pepco, while not contesting that the May 1999 injury occurred, argued to the ALJ and the CRB that the intervening lifting incidents and the fact that Mr. Boone's doctors did not consider the May 1999 injury showed there was no medical-causal relationship between that injury and his current condition. The company pointed to Dr. Johnson's records, which do not mention the May 1999 injury until 2003 and do not offer an opinion about medical causation. And they introduced an independent medical evaluation of Mr. Boone by Dr. John B. Cohen, in which Dr. Cohen determined that "[t]here is no indication that [Mr. Boone's multiple-level degenerative disc disease] is a direct result of his injuries." Dr. Cohen concluded, after physically examining Mr. Boone and reviewing his medical records, that Mr. Boone "has no evidence of a lumbar radiculopathy," "has not exhausted … conservative nonoperative treatment of his low back pain," and should "not undergo any surgery at this time and [instead] be treated more aggressively as needed[.]"

After finding that Mr. Boone had provided enough evidence to invoke the presumption of compensability,[3] the ALJ

---

2. Pepco's counsel asked Mr. Boone about another lifting incident in 2004, which Mr. Boone said he did not remember but which is referred to in his medical records.

3. "The District of Columbia Workers' Compensation Act includes a presumption that a 'claim comes within the provisions of this chapter.'" *McNeal v. District of Columbia Dep't of Emp't Servs.*, 917 A.2d 652, 655–56

concluded that Pepco had rebutted the presumption through the independent medical evaluation. The ALJ ultimately rejected Pepco's arguments, however, and disregarded Dr. Cohen's opinion because, while Dr. Cohen concluded Mr. Boone's back pain "was not directly caused by Claimant's work-related injury ... [t]he legal requirement is medical[lly] causally related and not direct result." Finally, the ALJ rejected a third-party utilization review report, conducted pursuant to D.C.Code § 32–1507(b)(6) (2001), that found the surgery recommended by Dr. Henderson was not reasonable and necessary because of the "lack of convincing evidence of a symptomatic neurocompressive lesion." While giving Dr. Henderson's opinion and the utilization review "equal weight," the ALJ was "not persuaded" by the utilization review because "it recommends additional conservative treatment that Claimant has already undergone.... Given the length of Claimant's conservative treatment without long[-]lasting relief as reported by the Claimant, it is reasonable that he undergo the prescribed surgery[.]" The CRB determined that the ALJ's compensation order was supported by substantial evidence in the record and affirmed.

### Analysis

The District's Administrative Procedure Act governs our review of a CRB decision, and "we will affirm the ruling unless it is arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1159–60 (D.C.2012) (quoting *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 992 A.2d 1276, 1280 (D.C. 2010)). We determine whether "[t]he (D.C.2007) (quoting D.C.Code § 32–1521(1)

CRB's findings [are] supported by substantial evidence on the record and its conclusions ... rationally flow from these findings." *Id.* (internal quotation marks omitted). "Substantial evidence is relevant evidence such as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Mills v. District of Columbia Dep't of Emp't Servs.*, 838 A.2d 325, 328 (D.C.2003)).

Our review here is "limited," and "[w]here there is substantial evidence to support the [CRB's] findings ... then the mere existence of substantial evidence contrary to that finding does not allow this court to substitute its judgment for that of the [CRB]." *Hisler v. District of Columbia Dep't of Emp't Servs.*, 950 A.2d 738, 743–44 (D.C.2008) (quoting *McEvily v. District of Columbia Dep't of Emp't Servs.*, 500 A.2d 1022, 1024 n. 3 (D.C.1985)).

Pepco argues that "[t]here is simply no evidence that the Claimant's current condition was precipitated by lifting a chain sling twelve years prior" and thus the CRB should not have affirmed the ALJ's determination that Mr. Boone's lower back pain is medically causally related to his work-related injury. *See Washington Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 744 A.2d 992, 998 (D.C.2000) (noting that once rebutted, the presumption of compensability is dissolved and the burden is on the claimant to prove by a preponderance of the evidence that the injury is compensable).

Under our cases, however, Mr. Boone did not have to establish, as Pepco seems to claim, a direct "causal connection between his current lower back pain and the work injury of May 25, 1999." It sufficed, as the ALJ noted, for him to have demonstrated that the work-related injury contributed to his condition—even if other (2001)).

factors, including a preexisting condition, contributed to it as well. *Ferreira v. District of Columbia Dep't of Emp't Servs.,* 667 A.2d 310, 312–13 (D.C.1995) ("The fact that other, nonemployment related factors may also have contributed to, or additionally aggravated [petitioner's] malady, does not affect [the] right to compensation under the aggravation rule." (quoting *Hensley v. Washington Metro. Area Transit Auth.,* 655 F.2d 264, 268 (D.C.Cir.1981))).

That Mr. Boone's condition in 2010 was worse than it was in 1999—even considering several intervening back spasms—did not preclude the possibility that the May 1999 lifting incident while working for PEPCO worsened the existing lower back injury from 1998, which is the event that Dr. Henderson concluded was what "it all goes back to." It may be true, as Pepco claims, that the intervening injuries "may have caused a lumbar strain[,] aggravated underlying discogenic disease ... [or] resulted in a nerve root compression." And we recognize that the records and opinions of Dr. Johnson and Dr. Henderson do not directly address how his condition causally relates to either the intervening incidents (for which Mr. Boone was treated in May of 2001, May of 2004, and August of 2008) or the May 1999 incident. Nevertheless, everyone including Mr. Boone's doctors agreed the November 1998 injury was the start of his back problems; Mr. Boone testified, without contradiction, that his condition got worse after lifting the chain sling in 1999;[4] the doctors' reports detail his medical treatment immediately follow-

ing the May 1999 incident; and the ALJ reasonably discredited the independent medical evaluation because it did not address Mr. Boone's aggravation argument.[5] Thus, while the support is all circumstantial, there existed substantial evidence in the record for the ALJ to conclude that there was a medical causal link between the 1999 workplace injury and Mr. Boone's condition.

Because the ALJ "address[ed] specifically" the utilization review report "and articulate[d] reasons" for rejecting the report, we will not overturn the CRB's decision upholding her conclusion that the surgery is reasonable and necessary under D.C.Code § 32–1507(b)(6). *Sibley Mem'l Hosp. v. District of Columbia Dep't of Emp't Servs.,* 711 A.2d 105, 107 (D.C.1998); *see also Hisler,* 950 A.2d at 746 ("[O]nce the utilization review is completed, ... the report ... is decisive on the issue of reasonableness and necessity of medical services unless specific reasons are articulated ·why it should not be decisive." (internal quotation marks · omitted) (citing *Sibley Mem'l Hosp., supra* )).

The order of the CRB is therefore *affirmed.*

*So ordered.*

Dissenting opinion by Associate Judge McLEESE.

McLEESE, Associate Judge, dissenting:

I would reverse the order of the CRB. In my view, there was not substantial evi-

---

4. Although it does not appear in the administrative record, a July 1999 letter included in Pepco's appendix on appeal is further evidence of this aggravation. Dr. Octavio Polanco, who treated Mr. Boone after the May 1999 incident, writes the following: "[A]fter a heavy lifting episode, [Mr. Boone's] lower spine essentially collapsed and he was not able to mobilize himself for a few days. He was referred to Dr. Wiesel and required a

series of trigger point injections by Dr. Blake, which the patient states produced no benefit."

5. *See Gross v. District of Columbia Dep't of Emp't Servs.,* 826 A.2d 393, 395 (D.C.2003) ("'[C]redibility determinations of an ALJ are accorded special deference by this court.'" (internal quotation marks and brackets omitted)).

dence to support the finding that Mr. Boone's current condition is medically causally related to the workplace injury Mr. Boone suffered in May 1999. I therefore respectfully dissent.

In concluding that the ALJ's finding was supported by substantial evidence, the court relies on four pieces of evidence: (1) Mr. Boone's back problems began in November 1998; (2) Mr. Boone testified that his condition got worse after the May 1999 injury; (3) medical reports indicate that Mr. Boone received treatment after the May 1999 injury; and (4) the ALJ reasonably discredited the report of Pepco's independent medical examiner, because those results were worded in terms of "direct" causation, which is not legally required. *Ante* at 355. I do not view this evidence as providing adequate support for the ALJ's finding, particularly when considered in light of the administrative record as a whole.

First, the fact that Mr. Boone had a back injury in November 1998 does not contribute to an inference that his current condition was aggravated by what happened in May of 1999. Rather, it simply poses the question: is Mr. Boone's current condition solely a product of the first injury, or other problems, or is his current condition worse because of what happened in May of 1999?

Second, Mr. Boone's aggravation testimony was both equivocal and vague. At first, Mr. Boone said that his back felt "the same" after the May 1999 incident. Then he said, without providing detail, that the May 1999 incident "just aggravated it more." In the absence of additional evidence providing some closer connection between the symptoms that Mr. Boone felt after the May 1999 incident and Mr. Boone's current condition, this testimony does not adequately support a finding of causation.

Third, although it is true that medical records indicate that Mr. Boone received treatment for back problems after May 1999, the records undermine rather than support a conclusion that the May 1999 injury was the (or even a) reason for that treatment. For example, a 2003 report from Dr. Johnson, Mr. Boone's treating physician, states that Mr. Boone's attorney had raised the question whether Mr. Boone's condition was related to the May 1999 injury, but goes on to say that there had been no prior indication in Dr. Johnson's records of any May 1999 injury.

Fourth, I agree that the ALJ reasonably discredited the independent medical examiner's report because "direct" causation is not required. The rejection of that report, however, is not affirmative evidence supporting a finding of causation.

Finally, Mr. Boone's case was substantially weakened by the testimony of Mr. Boone's own expert, who attributed Mr. Boone's condition to the November 1998 injury. Mr. Boone's expert did not even seem to be aware of the May 1999 injury.

For these reasons, I conclude that the evidence before the ALJ was not sufficient to permit a reasonable mind to find that Mr. Boone established by a preponderance of the evidence that his current condition was medically causally related to the May 1999 injury. I would therefore reverse.