Teresa VELASQUEZ, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

Sibley Memorial Hospital, Intervenor.

No. 97–AA–1640.

District of Columbia Court of Appeals.

Argued Oct. 20, 1998.

Decided Jan. 28, 1999.

---

Manuel R. Geraldo, Temple Hills, MD, for petitioner.

Clifton M. Mount, for intervenor. David B. Stratton and Suzanne M. Lewis, Washington, DC, were on the brief for intervenor.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before STEADMAN and RUIZ, Associate Judges, and NEWMAN, Senior Judge.

STEADMAN, Associate Judge:

On August 13, 1995, while working as a food service employee at Sibley Memorial Hospital, petitioner Teresa Velasquez stepped on a tin can and fell. She received temporary total disability payments until December 8, 1995, when she returned to work for several months. She appeals the decision of the Director of the Department of Employment Services (DOES) upholding a hearing examiner's denial of resumption of such disability payments from March 15, 1996, to date, based upon her claim of further incapacitating injuries resulting from the fall. Because the hearing examiner failed to sufficiently address several potentially key elements of the record, we vacate the Director's decision and remand the case for further proceedings not inconsistent with this opinion.

## I.

### A. Factual Background

On August 13, 1995, Teresa Velasquez twisted her ankle and fell on her right side during the course of her work as a food service employee when she stepped on a soda can. Her supervisor sent Velasquez to Sibley's emergency room for treatment. At the emergency room, Velasquez received an X-Ray and returned for follow-up in a week. When she returned, emergency room staff treated her and recommended further follow up with an orthopedist. As is customary in the emergency room, Velasquez was given the name of the on-call orthopedist, with whom she could seek further care. The on-call physician at that time was Dr. Michael R. Chardack.

Velasquez's first appointment with Chardack was the same day she received her referral, August 18, 1995. She saw him ten times thereafter over the course of nearly a year, at first on a several-times-a-month basis through November of 1995, and thereafter once every several months in 1996. Overlapping her course of visits with Chardack, Velasquez began treatment with Dr. Rafael A. Lopez in March of 1996, although she had begun requesting referrals to Lopez as early as October of 1995. Velasquez preferred Lopez because of the proximity of his office and his Spanish speaking skills. She saw Lopez approximately eleven times in 1996.

Velasquez requested and was granted temporary total disability benefits from August 13 to December 8, 1995. In Chardack's view, Velasquez's twisted ankle had healed by the time she went back to work in December. He could find no basis for her continuing complaints about being unable to stand on the foot. Velasquez turned to Lopez, who took the view that the ankle continued to be impaired and that her complaints of shoulder pain were also related to the August fall. By mid-March of 1996, Velasquez asserted that she could not do her job as then defined due to her physical condition. After a March 29, 1996 report by Dr. James Trone, a physician employed by Sibley, indicating that Velasquez was indefinitely disabled for work purposes, Velasquez was discharged on April 1,

1996. Velasquez claimed that the discharge itself was an act of retaliation for her workers' compensation claims.

Crediting Chardack's deposition testimony and medical reports, the hearing examiner found that Velasquez injured her ankle in the fall, but that the injury had healed by December 8, 1995, and that her later complaints about shoulder pain were both untimely for notification purposes, and unrelated to the initial injury.[1]

### B. Standard of Review

Generally, agency findings are accorded great deference. D.C.Code § 1–1509(e) requires of DOES that "every decision and order adverse to a party to the case...shall be accompanied by findings of fact and conclusions of law...supported by and in accordance with the reliable, probative, and substantive evidence." When these basic requirements are met, our review is very limited. *See Harris v. District of Columbia Office of Worker's Compensation*, 660 A.2d 404, 407 (D.C.1995). "That review presupposes, however, that the agency has made findings on the pivotal facts at issue." *Washington Hosp. Center v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 616, 618 (D.C.1998) (per curiam). "Ignoring the complexities with conclusory statements clearly will not suffice." *Spartin v. District of Columbia Dep't of Employment Servs.*, 584 A.2d 564, 573 (D.C.1990). Finally, "an administrative order can be sustained only upon the basis relied upon by the agency. We cannot substitute our judgment for that of the agency nor make findings on issues which the agency did not address." *Cooper v. District of Columbia Dep't of Employment Servs.*, 588 A.2d 1172, 1176 (D.C. 1991).

In the case before us, we agree with Velasquez that the Compensation Order affirmed by the DOES Director fails to sufficiently address three elements of the record: (1) the impact of the report by Sibley Hospital's Dr. Trone on the determination of disability; (2) the status of the claimant's relationship with her current physician, Dr. Lopez, as a possible authorized treating physician; and (3) the adequacy of notice of the claimed shoulder injury and its causal connection to the workplace. We address in the next section each of these elements.

### II.

### A. Doctor Trone

Dr. James Trone was an employee of Sibley Hospital and in March of 1996 examined Velasquez for the specific purpose of determining her ability to continue work. Yet the hearing examiner does not make mention of Trone anywhere in the Compensation Order, although Chardack, Lopez, Dr. Philip Assatourians[2], Dr. Easton L. Manderson,[3] and Dr. David Johnson[4] are all discussed. Lack of acknowledgement of the Trone evidence is difficult to understand, especially given the fact that counsel for Velasquez identified the Trone report as a "smoking gun" in his opening statement.

Trone's report, though brief, clearly links Velasquez's injury of August 13, 1995, to his assessment of her current status as indefinitely disabled for purposes of work. The entirety of his conclusions are as follows:

> I have reviewed Teresa's records and examined her this afternoon (March 29, 1996.)
>
> In August, 1995, she injured herself on the job and was seen in the Emergency Room at Sibley and referred to an orthopedic surgeon. Subsequently, she changed physicians. Despite follow-up, physical therapy and medication, she is unable to perform her usual work.

---

1. Further, the examiner found no wrongful discharge because a legitimate termination based on an employee's inability to work does not by itself constitute a wrongful termination. Velasquez briefly challenges this determination on appeal, but we perceive no error.

2. Assatourians had treated Velasquez for chest and shoulder pain prior to her August 13 injury.

3. Manderson was an orthopedic surgeon consulted for a second opinion.

4. Johnson was also an orthopedic surgeon who provided additional examination of Velasquez.

In my opinion, Teresa will remain disabled for an indeterminate period.

This statement's bearing on the compensation disposition must be addressed. At best, the evidence receives only backhand acknowledgment; without ever mentioning the report or the name Trone, the hearing examiner disposes of the wrongful discharge claim by stating that "termination due to physical incapacity is not prohibited under the Act." The problem is not with the hearing examiner's conclusion that evidence of work incapacity is not enough to establish wrongful termination. *See Lyles v. District of Columbia Dep't of Employment Servs.*, 572 A.2d 81, 82 (D.C.1990) (firing someone who insists he or she is disabled from working "does not by itself satisfy the 'animus' requirement for a finding of wrongful termination"). The error is in omitting such evidence from the compensation determination. Trone's conclusions need to be directly confronted and either discredited or reconciled with the rest of the evidence. Instead, the hearing examiner somewhat contradictorily asserts that "the claimant fails to demonstrate that the employer's proffer [sic] legitimate reason, i.e., that the claimant is medically unable to perform her duties, is pretext," presumably relying on Trone's report, while ultimately finding, without addressing the report, that the claimant was not entitled to further disability compensation.

Sibley asserts that workers' compensation proceedings and employment termination proceedings could lead to different conclusions using different criteria, but that posture is problematical in the circumstances here. Weight must be given to the Trone report in the disability determination because we require the hearing examiner to make factual conclusions based on "the record as a whole." *Robinson v. Smith*, 683 A.2d 481, 487 (D.C.19965). The relevance of the report should be heightened by the fact that Trone is Sibley's own medical employee chosen by the hospital to examine Velasquez; under an agency theory, the report then becomes something akin to a party-opponent admission in the workers' compensation proceeding. *See Short v. District of Columbia Dept.*

*of Employment Servs.*, 723 A.2d 845, 851 n. 5 (D.C.1998).

### B. Choice of Physician

■ Velasquez argues that the hearing examiner incorrectly held Lopez to be an unauthorized physician. Under workers' compensation, an employee may only be reimbursed for medical costs associated with a designated treating physician. *See* D.C.Code § 36–307(a). Though the employee is free to select a physician initially, later changes must be authorized by the employer or the Office of Workers' Compensation in order to maintain coverage. *See* D.C.Code § 36–307(b)(3), –307(d); 7 D.C.M.R. §§ 212.12–13 (1986); *King v. District of Columbia Dep't of Employment Servs.*, 560 A.2d 1067, 1071 (D.C.1989). The hearing examiner acknowledged that "the employer must establish that the claimant was aware of her right to choose, and that the chosen physician and the claimant began a 'course of treatment.' "

■ Although no party disputes that Chardack was initially a mere referral from Sibley's emergency room, Sibley contends, and the hearing examiner agreed, that Lopez was a physician selected by Velasquez without proper authorization. However, the events that led to Velasquez's treatment with Lopez require careful analysis. As stated previously, an injured employee has the initial right to choose her own treating physician. However, accepting a referral from an emergency room does not constitute a choice of physicians under the workers' compensation act. *See Ceco Steel, Inc. v. District of Columbia Dep't of Employment Servs.*, 566 A.2d 1062 (D.C.1989). *Ceco Steel* acknowledges the possibility of constructive selection of an emergency room referral physician as a treating doctor if "follow-up care extended beyond reasonable limits." *Id.* at 1064. An extended course of treatment may suggest that Chardack at some point constructively became Velasquez's chosen treating physician. Therefore, as the hearing examiner appropriately noted, it is Velasquez's continued treatment by Chardack *after* the first evidence of her cognizance of her right to choose her own treating physician that may or may not establish Chardack as the sole

authorized treating physician under the *Ceco Steel* standard.

The hearing examiner relied on legal correspondence of October 20, 1995, to establish the point at which Velasquez was on notice of her right to choose, and viewed her continuing relationship with Chardack *thereafter* as an active choice.[5] This analysis neglects the fact that Sibley viewed Velasquez's attempts to initiate her choice as a request to change physicians, and repeatedly declined to authorize the "change." Thus, Velasquez may not have been in a position at that time, based on the incorrect stance taken by her employer and the likely hardships it imposed upon her, to fairly exercise her right to make an initial choice of her treating physician. The hearing examiner himself seems unclear on this point, perhaps conflating the concepts of choosing and changing physicians: "Likewise, a review of the record supports the conclusion that the claimant became aware of her right to choose a physician no later than October 20, 1995. In this regard, by letter dated October 20, 1995 addressed to counsel for the claimant, counsel for the employer expressly addressed the change of physician issue."

The import of viewing Lopez as a chosen and authorized treating physician is twofold. First, it could affect the disability determination, since medical conclusions of treating physicians are given preference and a decision to credit another physician must be explained. *See Canlas v. District of Columbia Dep't of Employment Servs.*, No. 97–AA–1741, slip op. at 2–3, —— A.2d ——, —— —— (D.C. January 14, 1999); *Stewart v. District of Columbia Dep't of Employment Servs.*, 606 A.2d 1350, 1353 (D.C.1992). The hearing examiner's stance on Lopez's status as an unauthorized physician may have col-

ored his conclusions about Velasquez's condition, and led him to discount relevant evidence. Further, payment responsibility for Lopez would shift to Sibley if Lopez were determined to be the first patient-chosen physician, rather than an unauthorized change of physicians. *See King, supra,* 560 A.2d at 1071 (D.C.1989).

### C. Shoulder Injury

Velasquez challenges the hearing examiner's dismissal of her claim for compensation for her shoulder injury. The hearing examiner found that "the claimant never properly notified the employer of any alleged employment connection" and such "failure to properly notify...unduly prejudiced the employer."[6] Further, the hearing examiner concluded that Sibley "was unaware of the claimant's alleged work-related [shoulder] injuries prior to December 2, 1996," the date of the pre-hearing order. Finally he found that, in any event, the shoulder injury was not causally linked to the August fall. The uncertainty about Lopez's status also justifies a review of these conclusions.

The workers' compensation act requires written notice of an injury within thirty days "after the employee or beneficiary is aware or in the exercise of reasonable diligence should have been aware of a relationship between the injury or death and the employment." D.C.Code § 36–313(a). However, failure to give written notice is not a bar when the employer has knowledge of the injury and its relationship to the employment and is not prejudiced by the lack of written notice from the employee. D.C.Code § 36–313(d)(1).[7]

Velasquez claims she notified Chardack on her second visit, September 1, 1995, that her shoulder hurt, but that Chardack dismissed

---

5. Not addressed by the hearing examiner in the compensation order is a November 7, 1995 letter from Sibley's counsel that alleges Velasquez consented to continue treatment with Chardack. This evidence might perhaps suggest an active choice, at that point, but might equally be presumed to be a decision compelled by circumstance rather than choice. Further, during the proceedings, Velasquez's counsel objected that the correspondence did not accurately reflect oral communications between the attorneys.

6. No further factual findings accompanied the conclusion that Sibley was prejudiced by the delay in learning of the shoulder injury.

7. The lack of written notice is also not a bar to compensation where the agency excuses the lack on the ground that "for some satisfactory reason such notice could not be given" or if the employer does not raise the issue of lack of notice at the first compensation hearing. D.C.Code § 36–314(d)(2).

the complaint as a common side effect from the use of crutches, and did not include it in his medical report. Velasquez's later complaints of shoulder pain to Lopez, whom she began to see in March of 1996, were noted by him as causally linked to the August accident in his first medical report and thereafter. The hearing examiner appears to have assumed that the relevant time when the notice period began to run was the date of the injury. However, Velasquez should not necessarily be presumed to have known of the connection between her shoulder pain and the August incident until her physician made the link for her.[8]

Furthermore, in determining when Sibley either received notice or became aware of the shoulder problem as a work-related injury, there are several items in the record that suggest the December 2, 1996 date chosen by the hearing examiner may be inaccurate. First, Velasquez presented a disability slip to Sibley on March 20, 1996 given to her by Dr. Lopez that restricted her work because both her leg and shoulder were impaired. Although the slip itself does not causally connect the injury to the August accident, Lopez's medical report of the same date does make the link. Nine days later, Lopez ordered an MRI of Velasquez's shoulder. What reached Sibley is not totally clear. Testimony by the hospital's assistant administrator, some of which was noted by the hearing examiner, suggests that Sibley essentially ignored Lopez, apparently on the ground that he was not an authorized treating physician. This conclusion is itself subject to re-examination for the reasons set forth above.

Also, correspondence dated April 30, 1996 between benefits personnel indicates Sibley's workers compensation department had made a judgment regarding Velasquez's most recent injuries as not causally related to the initial accident. The hearing examiner fails

to address this document. Further, Sibley's Notice of Controversion, dated November 22, 1996, is referenced in the hearing as responding directly to the shoulder complaint.

If the notice problem is resolved in Velasquez's favor, the uncertainty about Lopez's status also calls for a review upon remand of the finding of lack of causal connection between the fall and the shoulder condition, just as with respect to the claim of continued ankle injury discussed above.

Accordingly, we vacate the Director's affirmance of the hearing examiner's compensation order and remand for further proceedings not inconsistent with this opinion.

*So ordered.*

---

8. The notice requirement becomes more complex when the employer knows of a work-incident but "both the injured employee and the employee's representative had underestimated the seriousness of the incident at the time of the incident." *Howrey and Simon v. District of Columbia Dep't. of Emp. Servs.*, 531 A.2d 254, 255 (D.C.1987). In *Howrey,* an employee tripped over a box on August 16, 1993, and originally thought she was

uninjured. The employee then developed some generalized physical complaints for several months, and only affirmatively linked what became a seriously debilitating condition to the earlier work-related incident after a doctor's appointment on January 18, 1994. Under these circumstances, the court found "there is no cognizable prejudice to the employer." *Id.* at 257.