Robin WILEY, Petitioner

v.

DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent

Washington Hospital Center, et al., Intervenors.

No. 08–AA–625.

District of Columbia Court of Appeals.

Argued March 24, 2009.
Decided Dec. 3, 2009.

---

William B. Newton, Washington, for petitioner.

Rebekah A. Miller, Washington, was on the brief for petitioner.

William S. Hopkins for intervenors.

Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Mary L. Wilson, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

Before WAGNER, TERRY, and KING, Senior Judges.

TERRY, Senior Judge:

In this workers' compensation case, petitioner Robin Wiley challenges a decision by the Department of Employment Services ("DOES") denying her request for temporary total disability benefits for a period of time during which she was absent from work, and for reimbursement of expenses she incurred in consulting a physician who, the DOES determined, was not her authorized treating physician. The precise issue before us is whether substantial evidence supports the DOES finding that she had selected another physician as her treating physician. We hold that substantial evidence does support that finding, and accordingly we affirm the order under review.

I

Ms. Wiley was employed as a secretary at the Washington Hospital Center ("WHC" or "the hospital") when, on September 27, 2006, she slipped and fell at work, injuring her right ankle. She sought and received attention in the WHC emergency room. An emergency room physician sent her home with an ice pack and crutches. and instructed her to remain off work until October 2. She was also directed to report to WHC's occupational health unit upon her return to work.

When Ms. Wiley reported to the occupational health unit on October 2, she met with Nurse Arlene Sheets. In the course

of examining her, Nurse Sheets reviewed with Ms. Wiley various workers' compensation forms, and Ms. Wiley signed a "Workers' Compensation Rights and Responsibilities" form [1] which stated, *inter alia,* "I also understand that I have a right to choose the physician providing care for my injury and that this physician will be paid directly by [my employer's insurer]." This document authorized Ms. Wiley to select either "Washington Hospital Center Occupational Health Providers" or a doctor of her own choosing as her treating physician.

Nurse Sheets, testifying at the hearing on Ms. Wiley's claim, said that she informed Ms. Wiley orally of her right to choose her own treating physician and asked if she wanted her treating physician to be Washington Hospital Center or "your private doctor or a specialist of your choice." Ms. Wiley replied that she had just moved to Washington from another city, and thus she did not yet have a personal physician; she therefore "said Washington Hospital Center," and Nurse Sheets made an entry to that effect on the form.

Ms. Wiley returned on October 5 and was examined by Nurse Sheets and by Dr. Ross Myerson, a WHC physician. Dr. Myerson diagnosed her injury as a sprain and concluded that she was capable of returning to work with modified duties in a sedentary position. Nurse Sheets then contacted Ms. Wiley's supervisor to arrange for appropriate accommodations. Ms. Wiley was provided with a stationary desk and a chair with wheels so that she could perform her secretarial duties without having to get up from her work station and move around, since she was still on crutches. According to her supervisor,

who also testified at the hearing, Ms. Wiley successfully performed her regular duties and did not express any difficulty in doing so. A few days later, however, Ms. Wiley complained to Nurse Sheets that although she was feeling better, she was having difficulty sleeping on account of the pain in her ankle.

Ms. Wiley had an appointment to meet again with Dr. Myerson on October 12. She canceled that appointment, however, and began seeing another physician, Dr. Fredric Salter, to whom her attorney had referred her. After examining her, Dr. Salter diagnosed her with a sprained ankle and a contusion of the right foot; consequently, he concluded, she was incapable of working and recommended that she not go to work at all. Following his recommendation, Ms. Wiley remained off work from October 11 to October 23.

Ms. Wiley thereafter sought temporary total disability benefits for the entire period during which she was absent from work, as well as reimbursement of her medical bills from Dr. Salter. After an evidentiary hearing, an administrative law judge ("ALJ") issued a compensation order denying Ms. Wiley's claim for benefits. In her order the ALJ first addressed whether Dr. Myerson was Ms. Wiley's treating physician. Although Ms. Wiley testified that she never met with Dr. Myerson, the ALJ did not credit her testimony to that effect because it was inconsistent with other credible evidence. The ALJ further found that Ms. Wiley knowingly reviewed and signed the form designating WHC Occupational Health Providers as her treating physicians, and that she thereafter met with Dr. Myerson, rejecting Ms. Wiley's assertion that she did not se-

1. This is a standard form issued by the District of Columbia government, not by the hospital.

lect a treating physician until she later met with Dr. Salter. The ALJ found that Ms. Wiley had selected Dr. Myerson as her treating physician, a finding supported by her statement at the hearing that Dr. Salter was her second choice of physicians.

Having determined that Dr. Myerson was her treating physician, the ALJ gave his medical opinion greater weight than that of Dr. Salter. The ALJ concluded that Ms. Wiley did not seek a change of treating physicians through the proper procedures. *See* 7 DCMR § 212.13 (2000). The ALJ further found that Ms. Wiley performed her work duties successfully after accommodations were made for her injury, and therefore determined that she had voluntarily limited her income by staying home from work. Accordingly, the ALJ issued a compensation order denying her request for benefits.

Ms. Wiley filed an administrative appeal from the ALJ's compensation order to the Compensation Review Board ("CRB"). The CRB affirmed the compensation order for the reasons stated by the ALJ, rejecting Ms. Wiley's argument that this court's decision in *Ceco Steel, Inc. v. District of Columbia Dep't of Employment Services,* 566 A.2d 1062 (D.C.1989), precluded a finding that Dr. Myerson was Ms. Wiley's treating physician. Ms. Wiley now asks us to review the CRB's final order.

## II

We review an agency decision to determine whether its findings are supported by substantial evidence in the record. *Jackson v. District of Columbia Dep't of Employment Services,* 955 A.2d 728, 731 (D.C.2008). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Children's Defense Fund v. District of Columbia Dep't of Employment Services,* 726 A.2d 1242, 1247 (D.C.1999) (citation omitted). This court may overturn an agency decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. D.C.Code § 2–510(a)(3) (2001).

The District of Columbia Workers' Compensation Act, as amended in 1991, provides that an injured employee has the right to choose an "attending physician" to provide medical care. D.C.Code § 32–1507(b)(3) (2001); *see Washington Hospital Center v. District of Columbia Dep't of Employment Services,* 789 A.2d 1261, 1263 & n. 2 (D.C.2002). We have said that "[u]nder workers' compensation, an employee may only be reimbursed," and the employer required to pay, for "medical costs associated with a designated treating physician." *Velasquez v. District of Columbia Dep't of Employment Services,* 723 A.2d 401, 404–405 (D.C.1999) (citing D.C.Code § 36–307(a) (1981)) (recodified as § 32–1507(a) (2001)). "Though the employee is free to select a physician initially, later changes must be authorized by the employer or the Office of Workers' Compensation in order to maintain coverage." *Id.; see* 7 DCMR §§ 212.12, 212.13 (2000). This statutory and regulatory scheme strives to achieve "a balance ... between ensuring reasonable employee choice and [the] right to effective medical treatment against the employer's right to protection against medical shopping and excessive costs." *Washington Hospital Center,* 789 A.2d at 1263 (footnote omitted); *see Ceco,* 566 A.2d at 1064 (statute effects a "compromise [between] the need to provide employees with a meaningful opportunity to choose an attending physician and [the need] to protect employers from doctor-shopping by an employee seeking a favorable diagnosis"). In reviewing the agency's determination that a claimant chose a treating physician, we will closely examine the claimant's conduct after the point at

which the evidence shows she recognized her right to make that choice. *Velasquez,* 723 A.2d at 404–405 ("as the hearing examiner appropriately noted ... [it is] continued treatment by [a physician] *after* the first evidence of [claimant's] cognizance of her right to choose her own treating physician that may or may not establish [that physician] as the sole authorized treating physician" (emphasis in original)).

■ Ms. Wiley's sole claim before this court is that substantial evidence does not support the ALJ's finding and the CRB's conclusion that she selected Dr. Myerson as her treating physician. On the contrary, both the ALJ's decision and the CRB's order affirming it are clear, thorough, and supported by substantial evidence.

The ALJ based her finding that Ms. Wiley selected Dr. Myerson as her treating physician on several pieces of evidence. She found that after discussing with Nurse Sheets her rights under the Workers' Compensation Act—including her right to treatment by a physician of her own choosing—Ms. Wiley explicitly selected Washington Hospital Center Occupational Health Providers. The ALJ found that Ms. Wiley expressed no reluctance in designating her employer's health providers, and that she thereafter received treatment from Dr. Myerson during a scheduled follow-up visit. She was scheduled to see Dr. Myerson again, but canceled that appointment in order to consult another physician, Dr. Salter, to whom she had been referred by her lawyer. Ms. Wiley made clear at the hearing, as the ALJ found, "that Dr. Salter was her *second* choice of physicians" (emphasis added). Thus we readily hold that substantial evidence supports the agency's finding that Ms. Wiley selected Dr. Myerson as her authorized treating physician. *See Hisler v. District of Columbia Dep't of Employment Services,* 950

A.2d 738, 744 (D.C.2008) (mere existence of contrary evidence does not permit this court to substitute its judgment for that of the CRB when substantial evidence supports the CRB's findings of fact).

Ms. Wiley's reliance on the *Ceco* case is misplaced. In *Ceco* we affirmed the agency's finding that the claimant had not constructively selected as his treating physician a doctor referred to him during an emergency room visit whom the claimant consulted for follow-up care on three occasions thereafter at the hospital's clinic. 566 A.2d at 1064. We concluded that the agency's interpretation that "accepting treatment as a result of emergency room care and reasonable follow-up care does not automatically constitute a selection under D.C.Code § 36–307(b)(3) [recodified as section 32–1507(b)(3) ] is reasonable and in accordance with the law." *Id.* We recognized that a claimant may constructively select a treating physician if the claimant's consultations with a physician referred to him by an emergency room doctor extend "beyond reasonable limits." *Id.* But *Ceco* did not address a situation–such as the one presented in this case—in which a claimant makes an express designation of a treating physician or group of physicians, receives treatment from a member of that group, and thereafter schedules a follow-up visit with that same doctor.

We now make explicit what was implicit in both *Ceco* and *Velasquez:* that whether a claimant has selected a treating physician under the Workers' Compensation Act (and, if so, who that physician is) is a question of fact for the agency to decide in the first instance. We review such findings of fact under the substantial evidence standard. *See, e.g., McNeal v. District of Columbia Dep't of Employment Services,* 917 A.2d 652, 656 (D.C.2007). We conclude in this case that substantial evidence does indeed support the agency's finding

that Ms. Wiley selected Dr. Myerson as her treating physician. We find no other error. Accordingly, the final order of the Compensation Review Board is

*Affirmed.*