*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-AA-1107

SALENA CATLETT, PETITIONER,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, *et al*, INTERVENOR

On Petition for Review of an Order
of the District of Columbia
Department of Employment Services
(CRB-87-19)

(Argued March 24, 2021            Decided June 8, 2021)[*]

*David M. Snyder* for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, filed a statement in lieu of brief for respondent.

*Mark H. Dho* with whom *Sarah O. Rollman*, was on the brief, for intervenor.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of petitioner's motion to publish.

Before BLACKBURNE-RIGSBY, *Chief Judge*, THOMPSON, *Associate Judge*, and FISHER, *Senior Judge*.

THOMPSON, *Associate Judge*: On February 26, 2018, petitioner Salena Catlett sustained an injury to her left arm while working as a station manager for intervenor Washington Metropolitan Area Transit Authority ("WMATA"). A Department of Employment Services ("DOES") Administrative Law Judge ("ALJ") issued a Compensation Order ("CO") awarding petitioner benefits based on an 11% permanent partial disability ("PPD") rating for the left arm, subject to "an apportionment of 5% for the previous schedule award to the same schedule body part," a credit for a prior PPD award, and a credit for a voluntary PPD payment WMATA had made prior to the evidentiary hearing. Petitioner appealed to the DOES Compensation Review Board ("CRB"), which affirmed the ALJ's order in its November 5, 2019, Decision and Order ("DO").

In her petition for review to this court, petitioner argues that the CRB erred in affirming the CO because (1) the ALJ erred and abused his discretion in evaluating the nature and extent of petitioner's disability and (2) the ALJ's determination "that apportionment is applicable is a misstatement of the current law in the District of Columbia." We conclude that the CRB erred in affirming the CO because certain of the ALJ's material factual findings were not supported by

substantial evidence and reflect an erroneous exercise of discretion. We also conclude that a remand is in order for the agency to reconsider, in light of its recent guidance setting out a narrow definition of "apportionment," whether the ALJ's determination that WMATA is responsible for only that part of the impairment percentage "that is greater than 5%" constitutes "apportionment" and, if so, whether apportionment is permissible in this case, which does not involve a "new employer."

## I. Administrative Proceedings

At an evidentiary hearing[1] before the ALJ on May 1, 2019, petitioner testified that during her shift on February 26, 2018, she was injured while pushing a steel gate at the L'Enfant Plaza Metro Station after the gate became stuck. Petitioner sought treatment that same day and was referred to an orthopedist, Dr. Hamid Quraishi, who diagnosed her with "[t]endinitis of the common extensor of the left elbow (tennis elbow traumatic)." Dr. Quraishi found that her left elbow

---

[1] A second hearing was held before the ALJ on July 15, 2019, during which the parties presented arguments related to apportionment and employer-credit issues, but at which no witnesses were called.

showed "marked tenderness over the common extensor" and that the "[e]xtension of the left wrist against resistance [was] very painful." Petitioner received an injection of Depo-Medrol into her left common extensor. X-rays of petitioner's left wrist taken that day showed "no fracture or dislocation." Petitioner testified that Dr. Quraishi examined her left wrist but found nothing wrong with it. By March 2018, petitioner had resumed work as a station manager.

At the hearing, when asked about her present symptoms, petitioner testified that she experienced constant "burning" and "throbbing" pain in her elbow area. She also described a constant "dull" and "achy" pain in her left wrist, which she said was a result of her "trying to take the strain off [her] elbow area[.]" When asked on direct examination how the problems she described affected her at work, petitioner stated that it "hurts" and that while she used both arms and hands to open the Metro station gate pre-injury, because of the pain in her left arm and wrist, she now uses only her right arm and hand to open the gate. Outside of work, petitioner testified, she has had to adjust how she carries heavier items such as groceries and clothes baskets and has had to rely more on her son for assistance. Petitioner also explained that sleeping on her left side results in her arm being "stiff and locked" and that she takes "over-the-counter" medications and uses a heating pad to manage her symptoms.

During cross-examination by counsel for WMATA, petitioner acknowledged that she had sustained a prior injury to her left shoulder on February 21, 2012, while employed by WMATA. A report signed by Dr. Joel Fechter, who evaluated petitioner on November 8, 2013, following that injury, noted that petitioner had "continued difficulties with pain in the neck and left shoulder" and that petitioner was "entitled to 5% impairment of the left upper extremity." Petitioner testified that she received an award of 5% PPD related to her "left upper extremity" and that the amount she received per that award was $8,518.89.

Documentary evidence presented at the hearing included an independent medical evaluation ("IME") report prepared by orthopedic surgeon Dr. Matthew Menet, who was engaged by petitioner's counsel; a transcript of Dr. Menet's deposition, conducted on April 17, 2019; and an IME report by orthopedic surgeon Dr. Willie Thompson, who was engaged by WMATA. Dr. Menet testified that he examined petitioner once, on August 8, 2018. His physical exam of petitioner indicated that she "demonstrated some pain to palpation involving the left elbow and forearm" and also "demonstrated pain that was reproduced with resisted wrist extension, as well as extension of her fingers, and pronation of her forearm." Dr. Menet ultimately diagnosed petitioner with "left elbow lateral epicondylitis." Dr.

Menet assigned her impairments of 0% due to loss of motion, 8% to the "left upper extremity" due to pain, and 8% to the "left upper extremity" due to loss of endurance, "for a total of 16% left upper extremity impairment." Dr. Menet's ratings were based on the Fourth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment ("AMA Guides") and Maryland Workman's Compensation guidelines.

When asked during his deposition how he arrived at his 8% rating for pain, Dr. Menet testified that this figure was "basically an estimation based on . . . [petitioner's] rating of pain, taking in her history on the pain scale." In terms of loss of endurance, Dr. Menet testified that he arrived at his 8% rating based on petitioner's description that she was "less able to do activities including lifting, carrying, or holding things." Dr. Menet testified that he found no loss of function, weakness, or atrophy. He also testified that he did not formally measure atrophy but based his assessment on his observation of petitioner.

Dr. Thompson saw petitioner on December 6, 2018, and reported that his examination of her left wrist revealed "extension limited to 30 degrees." He diagnosed a sprain to the left upper extremity. Referencing the Sixth Edition of the AMA Guides, he opined that petitioner had a "total of 11% impairment to the left

upper extremity for loss of motion." Dr. Thompson's report stated that he had "taken into consideration additional factors of pain, weakness, atrophy, loss of function and loss of endurance[,]" but concluded that these factors "do not constitute a basis for a rating of impairment."

During his deposition, Dr. Menet was asked about Dr. Thompson's IME report. Dr. Menet expressed agreement with Dr. Thompson's 11% rating based on petitioner's left-wrist range-of-motion limitation, stating that the rating was "appropriate." Dr. Menet acknowledged that he himself had not performed any evaluation of petitioner's left wrist because petitioner "seemed to be focusing her symptoms . . . more on the forearm and the elbow[.]" Using the Fourth Edition "combined value guides," Dr. Menet stated that his rating of 16% and Dr. Thompson's 11% rating were indicative of a total 25% impairment to the left upper extremity, which was solely the result of petitioner's February 2018 work injury.

The ALJ issued a CO on July 31, 2019, in which he rejected Dr. Menet's rating as "lack[ing] probative value for the purpose of awarding permanent partial disability benefits" and adopted Dr. Thompson's rating of 11% for the left arm. The ALJ explained that the "inherent shortcoming of Dr. Menet's analysis lies in the subtle admission he failed to perform a thorough examination of [petitioner]

when he performed his IME." The ALJ explained that Dr. Menet "does not believe [petitioner] has a medical impairment for the left arm because he did not find she has a medical impairment" and had found impairment solely on the basis of "the subjective factors of pain and loss of endurance."

The ALJ reasoned that petitioner, by embracing Dr. Thompson's 11% rating as a component of her claim for a PPD award, sought to "augment her rating by implicitly rejecting the rating of her doctor." The ALJ concluded that petitioner had thereby "elected to reject" the IME rating of her doctor, necessitating a finding and conclusion "that Dr. Menet did not do a good job when assessing the level of [petitioner's] impairment and . . . has not offered a reliable opinion." The ALJ also noted that Dr. Menet did not consider petitioner's left-wrist symptoms "when offering an impairment rating of 16%." The ALJ found that "[w]ith his [deposition] testimony, Dr. Menet has implicitly undermined his own findings, and the medical rationale to support his findings." The ALJ explained that "[g]iven the fact Dr. Menet agrees with Dr. Thompson's medical impairment rating under the AMA Guides 6th edition, logic would dictate acceptance of Dr. Thompson's rating for the subjective factors . . . as well."

With respect to whether WMATA was entitled to a dollar-for-dollar credit for PPD benefits it paid for the February 21, 2012, claim, the ALJ limited the amount of the credit to the amount petitioner actually received (i.e., $5,837.11, the PPD award net of attorneys' fees). Citing a May 2, 2019, en banc decision by the CRB that determined that apportionment applies to PPD awards,[2] the ALJ found that WMATA was entitled to apportionment. The ALJ determined that "[i]n light of *Lyles* [I], [WMATA] shall be responsible for that part of the PPD award that is greater than 5%." Summarizing his findings, the ALJ concluded that the District of Columbia Worker's Compensation Act ("DC WCA") entitled WMATA to "an apportionment of 5% for the previous schedule award to the same schedule body part, a credit in the amount of $5,837.11 for payments [petitioner] actually received [through the previous schedule award], and a credit for the amount it voluntarily paid for the 11% PPD award."

Petitioner appealed to the CRB arguing that the ALJ erred in finding her disability percentage was only 11% and in finding "not only that apportionment exists in the District of Columbia but also in permitting [WMATA] both a credit for benefits previously paid and a credit for apportionment." The CRB affirmed

---

[2] *See Lyles v. Howard University Hospital*, CRB No. 17-036 (R) (May 2, 2019) (*Lyles I*).

the CO, finding no error in the ALJ's analysis and findings regarding petitioner's impairment rating and, citing to *Lyles I*, concluded that "neither the facts of this case nor the governing law" supported petitioner's assertions regarding apportionment and credit.

In her petition for review, petitioner makes two sets of arguments. As noted above, petitioner first argues that the ALJ erred in analyzing the nature and extent of her disability in that he failed to fully consider Dr. Menet's evaluation and the explanations he gave during his deposition; "failed to exercise his discretion as required"; and "failed to consider petitioner's testimony in arriving at the degree of her disability." Petitioner's second claim of error pertains to apportionment. Petitioner argues that apportionment is not permitted under the DC WCA "[u]ntil and unless the City Council affirmatively adopts legislation creating apportionment."[3]

## II. Standard of Review

---

[3] Petitioner does not challenge the CO's determination that WMATA is entitled to a credit for PPD benefits it previously paid to her.

"Our review of a final order of the CRB is limited to determining whether the decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (quoting *Asylum Co. v. District of Columbia Dep't of Emp't Servs.*, 10 A.3d 619, 624 (D.C. 2010)). "Although our review in a workers' compensation case is of the decision of the CRB, not that of the ALJ, 'we cannot ignore the compensation order which is the subject of the [CRB's] review.'" *Id.* (quoting *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C. 2007)). "Our principal function in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues." *Straughn v. District of Columbia Dep't of Emp't Servs.*, 176 A.3d 125, 127 (D.C. 2017) (quoting *Georgetown Univ. Hosp.*, 916 A.2d at 151).

"We will affirm the CRB's decision if '(1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact.'" *Reyes*, 48 A.3d at 164 (quoting *District of Columbia Dep't of Mental Health v. District of Columbia Dep't of Emp't Servs.*, 15 A.3d 692, 696 (D.C.

2011)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wiley v. District of Columbia Dep't of Emp't Servs.*, 984 A.2d 201, 204 (D.C. 2009)) (internal quotation marks omitted). "If the factual findings are not supported by substantial evidence, we will not defer to them[.]" *Id.*

Our review of legal conclusions is de novo. *Reyes*, 48 A.3d at 164. "[W]e will defer to the agency's interpretation of the statute and regulations it administers unless its interpretation is unreasonable or in contravention of the language or legislative history of the statute and/or regulations it administers." *Negussie v. District of Columbia Dep't of Emp't Servs.*, 915 A.2d 391, 396 (D.C. 2007) (quoting *Cathedral Park Condo. Comm. v. District of Columbia Zoning Comm'n*, 743 A.2d 1231, 1239 (D.C. 2000)) (internal quotation marks omitted).

As a general matter, ALJs have "discretion in determining disability percentage ratings and disability awards because, as used in the [DC WCA], 'disability' is an economic and legal concept which should not be confounded with a medical condition[.]" *Negussie*, 915 A.2d at 398-99. But the WCA establishes some parameters for the ALJs' determinations, providing that in "determining disability pursuant to [D.C. Code § 32-1508(3)(A)-(S)] . . . , the most recent

edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment may be utilized, along with the following 5 factors: (i) Pain; (ii) Weakness; (iii) Atrophy; (iv) Loss of endurance; and (v) Loss of function." D.C. Code § 32-1508(3)(U-i); *see Negussie*, 915 A.2d at 398 (explaining that ALJs are authorized to consider these five factors). Determination of the extent of disability "requires a highly fact-bound inquiry that takes into account the particulars of the individual claimant," and "[i]t is for the ALJ to consider and weigh the relevant evidence presented in a given case." *Dent v. District of Columbia Dep't of Emp't Servs.*, 158 A.3d 886, 903 (D.C. 2017).

### III. Analysis

### A. Nature and Extent of Petitioner's PPD

Turning first to petitioner's argument that the ALJ's analysis of the nature and extent of her disability mandates reversal, we are persuaded that the CRB's finding of "no error in the ALJ's analysis and findings" cannot be sustained.

We begin with the ALJ's statement that Dr. Menet "does not believe [petitioner] has a medical impairment for the left arm because he did not find she has a medical impairment." By that finding, the ALJ seems to have ignored Dr. Menet's diagnosis that petitioner has left-elbow epicondylitis, which the workers' compensation case law confirms is a medical impairment.[4] In addition, in prior decisions the CRB has "impl[ied] that a medical determination of impairment is not a requirement for a schedule award." *Jackson v. Washington Hosp. Ctr.*, CRB 13-068, 2014 DC Wrk. Comp. LEXIS 179, at *16 (May 30, 2014) (citing the CRB's holding in *Wormack v. Fischback & Moore Elec. Inc.*, CRB No. 03-159, 2005 DC Wrk. Comp. LEXIS 166 (July 22, 2005)). Further, although Dr. Menet assigned a disability percentage based on the subjective factors of pain and loss of endurance only and did not assign a separate rating based on the epicondylitis as a medical impairment, the CRB has previously recognized that "the subjective

---

[4] *See, e.g.*, *Claridad v. District of Columbia Dep't of Emp't Servs.*, 228 A.3d 708, 709-10 (D.C. 2020) (recounting ALJ's finding that the claimant, who was diagnosed with epicondylitis, had a "permanent partial impairment disability in her right elbow and right forearm," supporting "a 10% permanent partial disability award"); *see also, e.g.*, *Banks v. Dawg, Inc.*, Docket No. 09C3360, 2012 Tenn. Cir. LEXIS 1909, at *8 (Sept. 25, 2012) (noting that the treating physician assigned the claimant a permanent medical impairment rating of 5% to the right upper extremity based on diagnosis of epicondylitis); *Manchester v. Ins. Co.*, No. 01S01-9711-GS-00246, 1998 Tenn. LEXIS 690, at *2-3 (Nov. 17, 1998) (describing 1% and 3% "permanent medical impairment as a result of epicondylitis" ratings, assigned, respectively, by claimant's treating physician and an orthopedic surgeon who performed an IME).

factors at times duplicate . . . the factors already included in the AMA Guides" (explaining, by way of example, that "'pain' can be the sole cause of . . . loss of motion under the AMA Guides"). *Wormack*, 2005 DC Wrk. Comp. LEXIS 166. Absent a further explanation from the CRB as to why it concluded that there was "no error" in the ALJ's findings and analysis, we must conclude that the CRB's affirmance of reasoning in the CO that appears to contravene CRB precedent is arbitrary and unsustainable. *Cf. Brown-Carson v. District of Columbia Dep't of Emp't Servs.*, 159 A.3d 303, 312 (D.C. 2017) (finding error in the CRB's unexplained, and therefore arbitrary and capricious, departure from its previously articulated approach).

Second, in explaining how he arrived at an impairment rating of 11%, the ALJ reasoned that, as a matter of logic, Dr. Menet's agreement with Dr. Thompson's impairment rating based on the AMA Guide and petitioner's wrist range-of-motion limitations "dictate[s] acceptance of Dr. Thompson's [0%] rating for the subjective factors . . . as well." We agree with petitioner that even if the ALJ was justified in rejecting Dr. Menet's rating, as a matter of law that did *not* dictate acceptance of Dr. Thompson's rating as the only alternative. As this court has explained, the extent of a claimant's disability is "an economic and legal concept" that is not dictated solely by a medical condition, and an ALJ errs by

assuming that he is required "to choose a disability percentage rating provided either by the claimant's or the employer's medical examiner." *Negussie*, 915 A.2d at 398-99. A determination of the extent of disability "requires a highly fact-bound inquiry [by the ALJ] that takes into account the particulars of the individual claimant" and "weigh[s all of] the relevant evidence [including the claimant's testimony] presented in a given case." *Dent*, 158 A.3d at 903. Here, while the ALJ expressly recognized that he was not "bound[] by a physician's impairment rating" and that he had "broad discretion to consider both medical and non-medical evidence," he erroneously exercised his discretion by simply adopting Dr. Thompson's rating once he had set aside Dr. Menet's rating. Further, before setting aside Dr. Menet's rating for "fail[ure] to perform a thorough examination" of petitioner, the ALJ did not take into account Dr. Menet's explanation that he did not evaluate or assign an impairment rating based on petitioner's left wrist because her complaints "focus[ed] . . . on [her] forearm and the elbow[.]"

Finally, although the ALJ summarized petitioner's testimony about the "burning, discomfort and throbbing" that she experiences outside of the left elbow and that worsens with activity, in going on to accept Dr. Thompson's rating of the degree of her disability, the ALJ appears not to have considered petitioner's

testimony. This was error.[5] *See, e.g.*, *Straughn*, 176 A.3d at 128 (holding that the ALJ was required to address claimant's testimony regarding her knee pain). Further, if the ALJ disregarded petitioner's complaints on the basis that she no longer "use[s] her left hand at work," that, too, was error. Her credited testimony that she formerly used both arms and hands to open the station gate and now uses only one arm and hand to avoid pain is not inconsistent with a schedule award that recognizes a "combination of physical impairment under the AMA guidelines, pain, [and] loss of endurance . . . that support[s] a finding that a claimant's wage-earning capacity . . . is likely to be[] compromised" in the future. *Dent*, 158 A.3d at 903.

In light of all the foregoing, we conclude that a remand is required for the ALJ to reconsider the evidence that bears on the nature and extent of petitioner's disability.

## B. Apportionment

---

[5] In addition, we see no support in the record for the ALJ's statement that petitioner implicitly "elected to reject" the IME rating of Dr. Menet.

The parties acknowledge that the CRB's May 21, 2020, en banc Decision and Order in *Lyles v. Howard Univ. Hospital*, CRB No. 20-032, 2020 DC Wrk. Comp. LEXIS 139 (May 21, 2020) ("*Lyles III*"), has changed the landscape. While in their pre-May 2020 decisions in the instant matter, the ALJ and the CRB applied the ruling announced in *Lyles I*, the CRB determined in *Lyles III* that its previous rulings in that case were erroneous. *Id.* at *18. The CRB concluded in *Lyles III* that the WCA statutory amendment (repeal of D.C. Code § 32-1508(6)) described in those rulings "did not alter the long-standing rule that an injured worker is entitled to the full PPD schedule award" without apportionment. *Id.* at *2.

A petition for review of the decision in *Lyles III* (Case No. 20-AA-0405) is now pending before this court. We have determined that in this Memorandum Opinion, we should neither follow *Lyles III* nor resolve the challenge to *Lyles III* that is presented in Case No. 20-AA-0405. That is because there is a potentially material factual difference between the instant case and *Lyles III*. As we explain below, we conclude that a remand is necessary for the CRB to consider in the first instance whether this case should be governed by the rule announced in *Lyles III*.

In *Lyles III*, the claimant injured his right upper extremity while working for Providence Hospital in 2011, resulting in a permanent partial disability percentage of 20%, and subsequently, in 2013, sustained additional injury to his right arm and shoulder while working for Howard University Hospital ("HUH"). *Lyles III*, at *2. As stated by the CRB, the issue presented was as follows:

> [H]ow did the repeal of D.C. Code § 32-1508 (6) affect a schedule award for permanent partial disability (PPD) benefits in cases where a worker with pre-existing PPD sustains a new accident *while working for a new employer* that increases the worker's PPD[?]

2020 DC Wrk. Comp. LEXIS 139, *1-2 (May 21, 2020) (emphasis added). The CRB held that the repeal of D.C. Code § 32-1508(6) "eliminated a *new employer's* ability to pay less than the full schedule award." *Id.* at *2 (emphasis added).

At least arguably, the legislative-history analysis and general reasoning that the CRB set out in reaching its conclusion could apply in cases, such as the present case, in which the employer seeking apportionment is not a new employer, but instead is the same employer that paid claimant a PPD schedule award for a

previous injury to the same body part.  However, in its *Lyles III* analysis, the CRB referred more than a dozen times, with seeming particularity, to an employer that (like HUH in *Lyles*) is a "new employer."  And, perhaps most tellingly, the CRB defined "apportionment" to "refer[] to the ability of a *new employer* to reduce its monetary liability [for a PPD schedule award] by an amount allocated for a previous injury to the same body part."  *Id.* at *7 (emphasis added).  For that reason, we cannot be sure whether the CRB would still treat the instant case as an apportionment case or, if so, whether the CRB would reach a conclusion equivalent to the one it reached in *Lyles III*.  A remand is warranted so that the CRB, applying its expertise with respect to the WCA, *see Dent*, 158 A.3d at 893, will have the opportunity to address those questions in the first instance.

## IV.  Conclusion

For the foregoing reasons, the CRB Decision and Order affirming the ALJ's Compensation Order is vacated and remanded (1) for the agency to consider all of the evidence relevant to the extent of petitioner's disability, without the errors described above and (2) for the CRB to reconsider the apportionment issue in light

of *Lyles III* (and in light of any determination in Case No. 20-AA-0405 that may be available by the time the CRB takes up this matter again).

*So ordered.*